375 P.2d 20

**EMPLOYMENT SECURITY COMMISSION OF ARIZONA, Appellant,**

v.

**Jennings C. FISH, dba J. C. Fish Concrete Contracting; and United States Fidelity and Guaranty Company, Surety, Appellees.**

No. 7381.

Supreme Court of Arizona,

En Banc.

Oct. 3, 1962.

Moore & Romley, Phoenix, for appellees, U. S. Fidelity and Guaranty Co.

LOCKWOOD, Justice.

In an action by plaintiff Employment Security Commission of Arizona against one Jennings C. Fish and his bonding company, United States Fidelity and Guaranty Company, defendants, the trial court entered a default judgment against Fish, and a summary judgment in favor of the bonding company. From the latter judgment plaintiff appealed.

The undisputed facts are that Fish, doing business as J. C. Fish Concrete Contracting, had qualified for and obtained an Arizona contractor's license, and had posted a $500 surety bond, as required. During the time the bond was in force, Fish incurred liability for unemployment insurance contributions, but refused to make payments thereon. Thereupon the commission brought the action against Fish and his bonding company, maintaining that the commission's claim for the tax contributions was within the purview of the bond. The trial court by its summary judgment ruled against this contention. The sole question for decision is the interpretation of A.R.S. § 32–1152 in relation to whether the bond required therein extends to failure by a contractor to pay unemployment compensation contributions.

At the time the action was brought, subparagraph C of § 32–1152, prescribing the conditions of the bond, read as follows:

Robert W. Pickrell, Atty. Gen., Richard J. Daniels, Asst. Atty. Gen., Phoenix, for appellant.

·"C. . The bonds shall be in such form as the registrar prescribes and shall be approved by him. The bonds shall provide that *the state or any person damaged by reason of any failure on the part of the principal, his agents or employees to comply with the provisions of this chapter, or amendments hereto, or rules and regulations made pursuant to this chapter, to complete any contract undertaken by the contractor pursuant to the authority of his license,* or to pay material or labor bills, may maintain an action at law against the contractor and surety and that such bond may be sued upon in successive actions until the whole penalty thereof is exhausted." (Italics supplied)

The italicized portion contains the language in dispute. The commission claims that it means that failure to comply with *any* requirements imposed on contractors in A.R.S. Chapter 10, subjects the bond to liability. Defendant bondsman claims that the words "to complete any contract undertaken by the contractor pursuant to the authority of his license" must be read as a necessary defining of the limits to which the "failure * * * to comply with the provisions of this chapter" makes the bond liable. In other words, defendant claims it was the intent of the legislature under subparagraph C that the bond should be subjected to liability by any person including the state, who had entered into a contract for the contractor's services under the authority of his license, when and if the contractor *failed to complete such contract as required by any of the provisions of Chapter 10.*

It is so axiomatic as to need no citation that the object of statutory interpretation is to determine the meaning and intent of the legislature. If the words of the statute are plain and unambiguous, courts will not go outside the language itself for interpretation. Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941 (1956). Where the words may be susceptible of more than one meaning, the court must adopt such interpretation as is reasonable. Hart v. Arganese, 82 Ariz. 380, 313 P.2d 756 (1957). In seeking the reasonable interpretation, where there is an apparent ambiguity, the court will not be bound by the letter, but will consider the statute as a whole to determine its intent and purpose. Adams v. Bolin, 77 Ariz. 316, 271 P.2d 472 (1954). Since the statute here is not completely free of ambiguity, we will look to the legislative intent.

The two sections here involved are part of what may be termed a code regulating contractors, now designated Chapter 10, A.R.S. The first legislative act embodying such a code was passed in 1931.[1] Section 9 of that act set forth grounds for suspension or cancellation of licenses, enumerating

1. Ariz.Laws 1931, ch. 102.

certain acts of omission and commission, including "abandonment of any contract without legal excuse" and "fraudulent departure from, or disregard of, plans or specifications in any material respect, without the consent of the owner or his duly authorized representative." No provision was made for filing of any bond. This code was amended in a number of particulars not material here, in 1933[2] and as amended was compiled as A.C.A.1939, chapter 67, Art. 8. The entire Article was repealed and a new code enacted in 1951.[3] The section on suspension and revocation of licenses was amplified, and designated more specifically the grounds therefor.[4] No requirement was made in any of the codes or amendments up to this point for filing a bond.

For the first time in 1952 the legislature added a section requiring a contractor to furnish "to the *owner* or *other contracting party*" a bond in the amount of the contract, *"Conditioned upon completion of the contract according to its terms and payment of all subcontract labor, and material supplier charges."*[5] The existing section covering grounds for suspension or revocation was not changed. In 1955 the legislature repealed the provision of the 1952 completion bond requirement and enacted a new section,[6] which was carried forward in the 1956 Code as § 32–1152, supra. The new statute provided for continuing bonds for each category of contractor, with minimum-maximum limitations. In 1958 § 32–1154 was amended by adding several new grounds for suspension or revocation of license, including *"failure in any material respect to comply with the provisions of this chapter."*

In 1961, after commencement of this case, the legislature amended § 32–1152. Only two changes of any significance were made: (1) The non-corporate surety provision was eliminated, and a cash deposit authorized as alternative to the corporate surety bond, and (2) the persons for whose benefit the bonds were required were specifically desig-

---

2. Ariz.Laws 1933, ch. 104.
3. Ariz.Laws 1951, ch. 55.
4. These included (1) "Abandonment of any contract or refusal to perform after submitting a bid on any work without legal excuse therefor. * * * (3) Fraudulent, gross or negligent departure from or disregard of plans or specifications in any material respect, without consent of the owner or his duly authorized representative. * * * (10) Failure in a material respect on the part of a licensee to complete any construction project or operation for the price stated in the contract for such construction project or op-
eration, or in any modification of sucn contract. * * * (12) Willful or deliberate failure by any licensee or agent or official thereof to pay any monies when due for any materials or services rendered in connection with his operations as a contractor when he has the capacity to pay or when he has received sufficient funds therefor as payment for the particular construction work project or operation for which the services, or materials were rendered or purchased, * * *." Ariz.Laws 1951, ch. 55, § 11.
5. Ariz.Laws 1952, ch. 43, § 67–2318a(1).
6. Ariz.Laws 1955, ch. 81, § 67–2310a.

nated as being "any person covered by this subsection."

■ We think upon a superficial reading of §§ 32–1152 and 32–1154 as they existed in 1960 at the time this case arose, there is a valid basis for either interpretation advanced by the commission or by the defendant. However, the intent of the legislature if it can be ascertained is the criterion we must follow. It appears to us upon reviewing the legislative history of the evolution of the contractor's code, that the legislature intended (1) to control contractors by issuance, suspension or revocation of licenses, and (2) after passage of the 1952 statute, to offer additional protection to persons damaged by failure of the contractor to perform his contract in the manner required by the statute, or to pay for materials or labor, by requiring bonds to insure payment of such damages. Certainly § 32–1154 contains several provisions the violation of which directly affect the completion of a contract, such as abandonment or refusal to perform after submitting a bid without legal excuse, departure from or disregard of plans or specifications without consent of the owner, failure to complete the contract in any material way for the price stated. It also contains many provisions which are grounds for revocation or suspension of license but for which certainly the required bond would not be liable, viz., conviction of a felony, filing a voluntary petition in bankruptcy, aiding or abetting an unlicensed person to use the contractor's license, etc.

■ The 1961 amendment is significant only in that it may be considered a clarification of legislative intent.[7] This appears to be a more reasonable explanation than the commission's contention that it constitutes a complete legislative change in policy.

■ We therefore agree that the trial court's interpretation of the statute was correct. Judgment affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.

---

**7.** The material language reads: "The bonds required by this chapter shall be in favor of the state for the benefit of any person covered by this subsection. The bond shall be subject to claims by any person who, after entering into a construction contract with the principal is damaged by the failure of the principal to perform the contract or by any person furnishing labor or materials used in the direct performance of a construction contract. * * *" Ariz.Laws 1961, ch. 70, § 2(D).