401 P.2d 168

**CONTINENTAL CASUALTY COMPANY,**
*a corporation,* **Appellant,**

**v.**

**GRABE BRICK CO., Inc., Beacon Lighting Fixtures and Lamps, Inc., an Arizona corporation, Columbia Redi-Mix Co., Inc., Appellees.**

**No. 2 CA–CIV 75.**

Court of Appeals of Arizona.
April 22, 1965.

May & Dees, Tucson, of counsel, Paul F. Newell, Tucson, for appellant.

Lesher, Scruggs, Rucker, Kimble & Lindamood, of counsel, D. Thompson Slutes, Tucson, for appellees.

MOLLOY, Judge.

Appellant Continental Casualty was defendant in three suits on a contractor's license bond issued pursuant to A.R.S. § 32–1152 as amended in 1961. The complaints of the appellees were filed solely against the appellant, it being undisputed that Gavlak, the prime contractor, was insolvent. The three actions were by stipulation consolidated for all purposes.

The plaintiffs filed a motion for summary judgment to which the defendant filed its opposition. The trial court granted plaintiffs' motion for summary judgment in all three actions. It is from this judgment the defendant appeals, contending that the trial court erred in granting summary judgment.

The appellees, Grabe Brick Co., Inc., Beacon Lighting Fixtures and Lamps, Inc., and Columbia Redi-Mix Co., Inc., had sold various building materials to a licensed contractor who was bonded by appellant, Continental Casualty. It is stated by the appellees in their respective affidavits that the building materials were sold "on open account" to the principal contractor; that said materials were used by the contractor in direct performance of a construction contract; that demand was made of the contractor for payment; and that no payment was made.

Referring to the affidavits individually, the Grabe affidavit said that the materials were supplied between March 16, 1962 and March 21, 1962. Grabe filed suit against Continental Casualty on March 18, 1963. The Beacon Lighting affidavit stated that it supplied the materials between February 3, 1962 and April 18, 1962. Beacon filed suit against Continental Casualty on March 25, 1963. The affidavit of Redi-Mix says that materials were furnished between January 25, 1962 and May 7, 1962. Redi-Mix filed suit against Continental Casualty on April 8, 1963.

The only issue in this appeal is whether the trial court erred in granting summary judgment as to all of the claims of the plaintiffs, the defendant contending that the statute of limitations contained within A.R.S. § 32–1152D bars some of the items of account upon which plaintiffs' suits are based.

The pertinent portion of A.R.S. § 32–1152D as amended reads as follows:

"* * * The bond shall be subject to claims by any person who, after entering into a construction contract with the principal is damaged by the failure of the principal to perform the contract or by any person furnishing labor or materials used in the direct performance of a construction contract. * * * No suit may be commenced on the bond after the expiration of one year following the *commission of the act on which*

*the suit is based* * * *." (Emphasis supplied.)

■ The general rule as to the interpretation that our courts must give to acts of the legislature has been enunciated by our Supreme Court in Employment Security Commission of Arizona v. Fish, 92 Ariz. 140, 375 P.2d 20 (1962), in the following words:

"It is so axiomatic as to need no citation that the object of statutory interpretation is to determine the meaning and intent of the legislature. * * *" (92 Ariz. 140, 142, 375 P.2d 20, 22.)

But, where the meaning of the statute is not clear, the Supreme Court in Fish stated:

"* * * Where the words may be susceptible for more than one meaning, the court must adopt such interpretation as is reasonable. Hart v. Arganese, 82 Ariz. 380, 313 P.2d 756 (1957). In seeking the reasonable interpretation, where there is an apparent ambiguity, the court will not be bound by the letter, but will consider the statute as a whole to determine its intent and purpose. Adams v. Bolin, 77 Ariz. 316, 271 P.2d 472 (1954). * * *" (92 Ariz. 140, 142, 375 P.2d 20, 22.)

The appellant contends that the legislature must have intended, as applicable to materialmen, that the "commission of the act on which suit is based" is the *delivery* of materials for use in the direct performance of the construction contract. In other words, as we understand the appellant's position, each time materials were delivered by the appellees to the appellant, such delivery was the commission of an "act" which commenced the one year statute of limitations within the meaning of the statute.

■ The primary purpose of the subject legislation is manifestly to protect laborers *and* materialmen. The appellant's construction of the statute would be particularly awkward when applied to laborers. What would be the "act" then—each day's work? or each stroke of the hammer?

■ It appears to this court that there is a simpler meaning to the subject language, and one that applies to both claims of materialmen and laborers. The court believes that the legislature intended that once a person who is entitled to recover on the bond has the legal right to sue, he must pursue his remedy within a year thereafter or not at all.

■ Although the context in which the word is used is ambiguous, we cannot conceive that the legislature could have intended that "act" mean anything other than an act (or lack thereof) which gives rise to a legal cause of action. It is our opinion that the "act on which the suit is based" must reasonably and logically be the breach of the legal duty owed to the appellees, that is, the duty to pay for the materials as agreed. The breach of that duty owed is the "act" on which suit is based. Reference to 1 C.J.S. Actions § 124 a, is the following definition of a cause of action:

"A cause of action accrues at the time when its owner may legally invoke the aid of a proper tribunal to enforce his demand; when he has a present right to institute and maintain action or suit."

The United States Supreme Court in Amy v. City of Dubuque, 98 U.S. 470, 25 L.Ed. 228 (1879), held that a cause of action accrues " * * * from the time the right to sue for a breach attaches." (98 U.S. 470, 476, 25 L.Ed. 228.)

It is reasonable that the legislature intended that the time when the one year limitation would commence to run would be determined by the agreement between the principal (contractor) and the materialmen.

■ The defense of the statute of limitations is not favored by the courts. In O'Malley v. Sims, 51 Ariz. 155, 165, 75 P.2d 50, 115 A.L.R. 634 (1938), our Supreme Court said:

" * * * We have repeatedly held that while the defense of the statute of limitations is a legitimate one, it is not favored by the courts, and, where two

constructions are possible, the one which gives the longer period of limitations is the one which is to be preferred. * * *" (51 Ariz. 155, 165, 75 P.2d 50, 54.)

The only facts which have been presented as to what the agreement between the contractor and appellees was is alleged in the appellees' affidavits. It is stated in the said affidavits that the materials were sold to the contractor on "open account." Since the appellant has filed no controverting affidavit nor any other papers disputing this fact, we are bound to accept the fact that the contractor and appellees were doing business on an open account basis as true. State Automobile & Casualty Underwriters v. Engler, 90 Ariz. 321, 367 P.2d 665 (1961).

■ As defined by our Supreme Court in Connor Livestock Co. v. Fisher, 32 Ariz. 80, 255 P. 996, 57 A.L.R. 196 (1927):

"Generally speaking, an open account is one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions. * * *" (32 Ariz. 80, 85, 255 P. 996, 997.)

A more thorough treatment of what an "open account" consists of is found in 1 Am.Jur.2d, Accounts and Accounting, § 4, p. 373:

"An open account results where the parties intend that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits. This single liability is to be fixed on the one part or the other, as the balance shall indicate at the time of

settlement, or following the last pertinent entry of the account, and it must be one mutually agreed upon between the parties or impliedly imposed upon them by law."

This court has found the general rule to be that where the parties are doing business on an "open account" basis the statute of limitations does not run during such a state of mutual dealings, but only from the date of the last item. Annotation: What constitutes an open, current account within the Statute of Limitations, 1 A.L.R. 1060. The general rule stated affirmatively in 54 C.J.S. Limitations of Actions § 165 a, is as follows:

> "* * * where there is a mutual, open, and current account, the cause of action to recover the balance accrues, and the statute of limitations begins to run, at the date of the last item; and if the last item is not barred it draws to itself all the other items, which become barred only when the statute has run against the last item."

This rule has, in many jurisdictions, been given statutory expression. Arizona Revised Statutes, § 12–543; West's Ann. Calif.Codes, CCP, § 337; Colo.Revised Statutes (1963), § 87–1–12.

It seems reasonable to this court that "act" as set forth in A.R.S. § 32–1152D is determined by the contractor and appellees' agreement to do business on "open account." By the definition there is but a single and indivisible liability from the series of items on account. Since the cause of action to recover the balance accrues, and the statute of limitations begins to run at the date of the last item, we believe such date to be the "act on which the suit is based" within the contemplation of the statute.

It is well settled law that a motion for summary judgment should be granted if upon an examination of the entire record it is determined that there are no disputed facts, which, if true, could affect final judgment. State Automobile & Casualty Underwriters v. Engler, supra; Rules of Civil Procedure 56(c), 16 A.R.S. It is undisputed that the appellees brought their respective actions within a year after the date of the last items on account. An examination of the record has disclosed no genuine issue as to any material facts. We believe the court was correct in granting summary judgment.

For the reasons heretofore given, the judgment of the trial court is affirmed.

HATHAWAY, J., and JACK G. MARKS, Superior Court Judge, concurring.

NOTE: The Honorable Herbert F. Krucker being disqualified, The Honorable Jack G. Marks, Judge of the Superior Court of Pima County, was called to sit in his stead and participate in the determination of this decision.