838 P.2d 1325

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, Plaintiff–Appellee,**

v.

**ARIZONA DEPARTMENT OF TRANSPORTATION, an agency of the State of Arizona, Defendant–Appellant.**

No. 1 CA–CV 90–159.

Court of Appeals of Arizona,
Division 1, Department C.

April 7, 1992.

Reconsideration Denied June 2, 1992.

Review Denied Nov. 3, 1992.

Jennings, Kepner & Haug by Robert O. Dyer, J. Daniel Shell, Phoenix, for plaintiff-appellee.

Grant J. Woods, Atty. Gen. by Rick E. Olson, Bonnie E. Elber, Asst. Attys. Gen., Phoenix, for defendant-appellant.

## OPINION

GRANT, Judge.

This is an appeal from the trial court's holding that a performance bond surety on a road construction contract was not liable under its statutory performance bond for the principal's unpaid unemployment insurance taxes. The trial court concluded that the state could not offset such unpaid taxes against the contract balance after the sure-

ty completed construction of the project upon the principal's default. We reverse.

## I. FACTS

The facts are not in dispute. On August 9, 1985, the State of Arizona, through the Department of Transportation ("ADOT"), entered into a road construction contract with Rainbow International, Inc. ("Rainbow") as contractor. Hartford Accident and Indemnity Company ("Hartford") issued a performance bond on the contract in the amount of $1,534,586.56, the full contract price. The bond identifies Rainbow as the principal and ADOT as the obligee.

Rainbow subsequently defaulted on the contract, and, on February 22, 1986, Hartford took over and completed construction on the project at a net loss of $312,817.71. At the time Hartford completed construction, the sum of $8,796.70 remained unpaid from the contract funds. The construction was accepted by ADOT as final on February 11, 1988.

Rainbow failed to pay unemployment insurance taxes in connection with the bonded project for the third and fourth quarters of 1985 through February 22, 1986, when Hartford took over the construction. The Arizona Department of Economic Security ("DES") levied upon all the contract funds being retained by ADOT to satisfy Rainbow's unpaid unemployment insurance taxes. ADOT set off Rainbow's pre-default unemployment insurance tax obligations against the remaining contract funds. The amount is $6,043.61 plus $200.00 in penalties and $2,594.06 in interest. ADOT has refused to pay any of the balance of the contract funds to Hartford. Hartford has conceded that ADOT is entitled to set off against the contract funds unemployment insurance taxes that Hartford incurred as an employer after it took over the project. It is undisputed that this amount totals $1,410.80, leaving a balance of $7,385.90.

Hartford instituted this action against ADOT in an effort to recover the contract funds Hartford claims it is owed as completing surety. Both Hartford and ADOT filed motions for summary judgment. The trial court granted Hartford's motion for summary judgment, holding that, as a matter of law, ADOT was not entitled to set off Rainbow's pre-default unemployment insurance tax obligations against the remaining contract funds. ADOT appeals from that judgment.

## II. DISCUSSION

### A. Hartford's Liability for Rainbow's Unpaid Unemployment Insurance Taxes

ADOT argues that Hartford is obligated under its performance bond to pay Rainbow's pre-default unemployment insurance tax obligations because Rainbow was expressly required to pay such taxes by its construction contract with ADOT and the terms of that contract were incorporated into the bond. The performance bond, after incorporating the construction contract in a recital, states that the surety's liability is as follows:

NOW, THEREFORE THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall faithfully perform and fulfill all the undertakings, covenants, terms, conditions and agreements of said contract during the original term of said contract and any extension thereof, with or without notice to the Surety, and during the life of any guaranty required under the contract, and shall also perform and fulfill all the undertakings, covenants, terms, conditions, and agreements of any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the Surety being hereby waived; then the above obligation shall be void, otherwise to remain in full force and effect....

The construction contract between ADOT and Rainbow incorporated into its terms the "Arizona Department of Transportation, Highways Division, Standard Specifications for Road and Bridge Construction, edition of 1982." Two relevant sections of those specifications are as follows:

### SECTION 103.05

#### Requirement of Contract Bond:

The successful bidder shall furnish bond to the State of Arizona with surety in the amount of 100 per cent of the total contract award. Said bond shall be conditioned upon the faithful performance of the contract and the payment of all labor, materials and supplies furnished therefor and the payment of all workman's compensation, occupational disease and *unemployment compensation premiums.* [emphasis added].

\* \* \* \* \* \*

### SECTION 107.02

#### Permits, Licenses and Taxes:

The contractor shall procure all permits and licenses, pay all charges, fees, *taxes* and give all notices necessary and incidental to the due and lawful prosecution of the work. [emphasis added].

ADOT's argument is simply that Hartford's performance bond guaranteed the full performance of the construction contract, and the contract required Rainbow to pay all unemployment insurance taxes. ADOT claims that Hartford is therefore obligated under its bond to pay those unemployment taxes incurred but not paid by Rainbow in connection with the project. Because Hartford has refused to pay the unemployment insurance taxes owed by Rainbow, and because the amount of such unpaid taxes, together with penalties and interest, exceeds the remaining contract funds, ADOT claims that Hartford is not entitled to receive any of the remaining funds.

■ Hartford argues in response that, notwithstanding the provisions of the construction contract between Rainbow and ADOT and the fact that the bond incorporates those contractual provisions, Hartford's surety liability should be determined by the statute pursuant to which the bond was issued, not the bond itself. *See Paul Schoonover, Inc. v. Ram Constr. Inc.,* 129 Ariz. 204, 206, 630 P.2d 27, 29 (1981) (liabili-

ty of compensated sureties on statutory undertakings is measured by the terms of the statute under which they issue their bonds); *Norton v. First Fed. Sav.,* 128 Ariz. 176, 178, 624 P.2d 854, 856 (1981). Arizona courts have also held that, when a bond has been issued pursuant to a statute, the terms of the statute control the surety's liability even when the terms of the bond are more expansive than the terms of the statute. *Brown Wholesale Elec. v. Merchants Mut. Bond.,* 148 Ariz. 90, 713 P.2d 291 (App.1984). The supreme court in *Porter v. Eyer,* 80 Ariz. 169, 294 P.2d 661 (1956) stated as follows:

> Such a bond must be given the effect which in reason must have been intended by the statute. Whatever is included in the bond, and is not required by the law, must be read out of it, and whatever is not expressed, and ought to have been incorporated, must be read as if inserted into it. . . .

80 Ariz. at 172, 294 P.2d at 663 (citing 11 C.J.S., *Bonds,* p. 420). The actual statutes in *Porter* and *Brown Wholesale* differed substantially from the statute in the present case.

In the present case, the terms of the bond itself also support Hartford's argument. After setting forth the condition, the bond contains the following proviso:

> PROVIDED, HOWEVER, that this bond is executed pursuant to the provisions of Title 34, Chapter 2, Article 2, of the Arizona Revised Statutes, and all liabilities on this bond shall be determined in accordance with the provisions of said Title, Chapter and Article, to the extent as if it was copied at length herein.

However, the fact that Hartford's liability should be determined according to the statute does not help Hartford in this case. Hartford issued the performance bond pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 34–222(A)(1) which provides that the bond shall be "conditioned upon the faithful performance of the contract in accordance with plans, specifications and conditions thereof." [1] Therefore, the statute it-

---

1. A.R.S. § 34–222(A) provides as follows:

A. Except where specifically exempted by

self requires that the performance bond guarantee full performance of all the conditions of the contract, one of which is Rainbow's obligation to pay unemployment taxes.

The New Mexico Supreme Court considered a case very similar to the case at bar in *Employment Sec. Comm'n v. C.R. Davis Contracting Co.*, 81 N.M. 23, 462 P.2d 608 (1969). In the *Davis* case, the New Mexico Highway Department contracted with Davis Construction to complete a public road project. Davis defaulted in the performance of the four contracts it had entered into. Peerless Insurance Company, which had issued performance bonds on the contracts, completed construction on two of the projects and paid off the outstanding claims in the other two contracts. At the time Peerless completed the projects, the Highway Department retained contract funds due upon completion of the construction. However, Davis had failed to make certain unemployment compensation contributions in connection with the projects. Both the Highway Department and the New Mexico Employment Security Commission brought a declaratory judgment action claiming their right to set-off the unpaid unemployment compensation contributions against the retained contract balances.

The court in *Davis* noted that the Peerless bond incorporated the provisions of the construction contracts which, like the contract in the case at bar, provided that "[t]he Contractor shall procure all permits and licenses, pay all charges, royalties, fees, and *taxes*." 462 P.2d at 610 (emphasis in original). The court also noted that the New Mexico statute requiring the issuance of performance bonds in connection with public works projects required a bond "conditioned for the performance and completion of such contract according to its terms, in 'compliance with all requirements of law,' and also for payment of labor and materials." 462 P.2d at 611. After considering the Peerless bond, the construction contract and the applicable New Mexico statutes, the court held that Peerless, by its bond, became obligated to the State of New Mexico for the payment of the unemployment taxes and that the Highway Department was permitted to set-off Peerless's liability for taxes, interest and penalties against the retained balances under the contracts. *Id.*

Although acknowledging that *Davis* supports ADOT's position, Hartford argues that this court should instead follow certain federal cases decided under the federal Miller Act, 40 U.S.C. Sections 270a(a)–270a(d) (1988), which have held that a completing performance bond surety is entitled to the full retainage being held by the government in connection with a public works project free from set-off for taxes owed by the defaulting principal. *See, e.g., Dependable Ins. Co. v. United States*, 846 F.2d 65 (Fed.Cir.1988); *Security Ins. Co. of Hartford v. United States*, 428 F.2d 838, 192 Ct.Cl. 754 (1970); *Trinity Universal Ins. Co. v. United States*, 382 F.2d 317 (5th Cir.1967). The rationale for these decisions was described by the Eighth Circuit Court of Appeals in the *Dependable* case as follows:

> [W]hen a surety finances completion of a project, it confers a benefit upon the government by relieving it of the task of completing performance itself. It there-

statute, before any contract is executed with any person for the construction, alteration, or repair of any public building, a public work or improvement of any county, city or town, or officer, board or commission thereof, and irrigation, power, electrical, drainage and flood control districts, tax levying public improvement districts, and county or city improvement districts, he shall furnish to the agent entering into such contract the following bonds which shall become binding upon the award of the contract to such person, who, for purposes of this article, means "contractor":

1. A performance bond in an amount equal to the full contract amount conditioned upon the faithful performance of the contract in accordance with plans, specifications and conditions thereof. Such bond shall be solely for the protection of the state or the public body awarding the contract, as the case may be.

2. A payment bond in an amount equal to the full contract amount solely for the protection of claimants supplying labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.

fore becomes subrogated not only to the rights of the prime contractor but to those of the government. [citation omitted.] Accordingly, a completing performance bond surety has the right to accumulated contract proceeds free from set off by the government.

846 F.2d at 67.

The Arizona Supreme Court has also noted that a completing performance bond surety confers a benefit on the government and that the purpose of a performance bond is to insure the proper completion of the public works project so as to avoid the necessity of spending the citizens' money to fulfill the contractor's responsibilities. *Norton*, 128 Ariz. 176, 624 P.2d 854 (court explained purpose of a performance bond posted pursuant to a Flagstaff City ordinance). However, the rationale provided in *Norton* and the federal cases cited by Hartford is not persuasive in this case.

■ First, Arizona's Little Miller Act, A.R.S. sections 34–222—34–224, was modeled after the federal Miller Act, but the language of the two statutes differs. When our legislature models a statute after that of the federal government, relevant federal judicial interpretations are persuasive in interpreting the Arizona statutory counterpart only if the construction given by the federal courts is based on the same wording. *SCA Constr. Supply v. Aetna Cas. and Sur.*, 157 Ariz. 64, 754 P.2d 1339 (1987). The federal counterpart to A.R.S. section 34–222, 40 U.S.C. section 270a, requires a performance bond with a surety satisfactory to the officer awarding the public contract and, in subsection (d), states that every performance bond required under the section shall specifically cover taxes imposed by the United States. A.R.S. section 34–222, while not expressly requiring that the performance bond cover taxes, does require that the bond be conditioned upon the full performance of all the plans, specifications and conditions of the underlying contract. Therefore, as the *Davis* court noted in comparing the relevant New Mexico statute to 40 U.S.C. section 270a, the state's performance bond statute could be considered broader than the federal law.

■ The federal cases cited by Hartford are also unpersuasive because they are factually distinguishable from the case at bar. None of the federal cases relied upon by Hartford apparently involved construction contracts that expressly obligated the contractor to pay the taxes. Because Rainbow's contract *does* contain this requirement, and because such taxes remain unpaid, Hartford would not be entitled to the same equitable subrogation rights to which the completing sureties in those cases were entitled. Although it is true that a completing surety under a performance bond becomes equitably subrogated both to the contractor's rights to receive the retained contract funds and to the government's right to use those funds to complete the contract, *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962), Hartford did not completely perform Rainbow's obligations under the contract, as required by A.R.S. section 34–222 and the performance bond. Equitable subrogation arises out of the "equitable doctrine that when one, pursuant to a legal obligation and not as a volunteer, fulfills the duty of another he is entitled to assert the rights of that other against third parties." *General Acrylics v. United States Fidelity & Guar.*, 128 Ariz. 50, 53, 623 P.2d 839, 842 (App.1981). Here, Hartford did not completely fulfill Rainbow's duty.

In another federal case, *United States v. Phoenix Indem. Co.*, 231 F.2d 573 (4th Cir.1956), the court held that, when a construction contract expressly obligated the contractor to pay all taxes legally collectible because of the construction project, and the performance and payment bond was conditioned upon the contractor's performing all of the agreements contained in the construction contract, the United States was entitled to recover on the bonds as a third-party beneficiary for federal unemployment taxes, withholding taxes and social security taxes which accrued during the construction work. Although this case did not involve an attempt by the government to offset contract retainages against

the contractor's tax liabilities, the bond and underlying contract were factually similar to the case at bar.

Besides the federal cases discussed above, Hartford also relies on *Employment Sec. Comm'n v. Fish*, 92 Ariz. 140, 375 P.2d 20 (1962), in which the Arizona Supreme Court held that a contractor's license bond issued pursuant to A.R.S. section 32–1152 did not render the surety liable to DES for the contractor's unpaid unemployment insurance taxes. The language of A.R.S. section 32–1152(c) at the time the bond was issued, which prescribed the conditions of the bond, read as follows:

> C. The bonds shall be in such form as the registrar prescribes and shall be approved by him. The bonds shall provide that *the state or any person damaged by reason of any failure on the part of the principal, his agents or employees to comply with the provisions of this chapter, or amendments hereto, or rules and regulations made pursuant to this chapter, to complete any contract undertaken by the contractor pursuant to the authority of his license,* or to pay material or labor bills, may maintain an action at law against the contractor and surety and that such bond may be sued upon in successive actions until the whole penalty thereof is exhausted.

92 Ariz. at 142, 375 P.2d at 21–22 (emphasis in original).

In *Fish*, DES argued that the statute meant that failure to comply with any requirements imposed on contractors, one of which was the payment of unemployment taxes, would subject the bond to liability. The surety claimed that it was only liable to a party who had contracted for the contractor's services for damages relating to the failure of the contractor to complete the contract. The court concluded that the statute was ambiguous but that the legislative history showed that the purpose of the bond was to protect persons contracting with a contractor who were damaged by failure of the contractor to perform the work, and the bond therefore covered only those requirements in the statute which

directly affected the completion of a contract. 92 Ariz. at 144, 375 P.2d at 23. DES's claim was therefore denied. As distinguished from the contractor's license bond statute in *Fish*, the statute involved in this case is not ambiguous and clearly requires that the performance bond be conditioned on the faithful performance of *all* the contract's conditions, not just those pertaining to the construction work.

Hartford additionally contends that, since the purpose of a performance bond is to guarantee completion of the work, requiring a surety to pay its principal's pre-default unemployment insurance taxes frustrates that purpose by depleting the bond funds available for the performance of the construction work. However, it is undisputed that ADOT has only set-off unemployment insurance taxes accrued in connection with this particular project. The amount of those taxes presumably would have been figured into the cost of construction for the purpose of computing the contract amount.

■ Having considered the provisions of the construction contract between ADOT and Rainbow in conjunction with Hartford's bond and the statute pursuant to which it was issued, we conclude that Hartford is liable pursuant to its bond for Rainbow's unpaid unemployment insurance taxes incurred in connection with the bonded project. We also note that public policy supports this holding because of our legislature's stated declarations in favor of economic security. The statutory employment security provisions in this state require that unemployment insurance contributions be made by all employers statewide. A.R.S. section 23–601 provides that

> the public policy of this state is declared to be as follows:
> Economic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this state.... The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require ... the compulsory setting aside of unemployment reserves to be used for the benefit

of persons unemployed through no fault of their own.

### B. DES's Right to Make Claim Under Hartford's Bond

■ Hartford argues that, even if it would otherwise be liable under its performance bond for the payment of Rainbow's unemployment insurance tax obligations, ADOT should not be permitted to offset the amount of such unpaid taxes against the contract balances because DES, to which the taxes are owed, is not a proper claimant under Hartford's bond. In support of this argument, Hartford relies on the portion of A.R.S. section 34–222(A) that provides that the "bond shall be solely for the protection of the state or the public body awarding the contract, as the case may be," and various Arizona cases holding that an incidental third-party beneficiary is not entitled to recover under the bond. *See, e.g., Norton,* 128 Ariz. at 180, 624 P.2d at 858; *Tanner Companies v. Ins. Mktg. Services, Inc.,* 154 Ariz. 442, 743 P.2d 951 (App.1987). Hartford contends that, because the bond specifically identifies ADOT and not DES as obligee, the bond is not liable to satisfy DES's tax claims.

However, Hartford has conceded that it is liable for unemployment insurance taxes accrued during the time it completed the construction, and that ADOT is entitled to offset that amount from the retained contract balances. This is in apparent recognition of the fact that ADOT and DES are both agencies of the real contracting entity, the State of Arizona. Therefore, third-party beneficiary arguments are inapplicable. *See State ex rel. Morrison v. Thomas,* 80 Ariz. 327, 297 P.2d 624 (1956) (all actions of agents of state done within the scope of their authority are acts of their principal, the State of Arizona). In addition, pursuant to A.R.S. sections 23–752 and –753, DES has the authority to satisfy a tax obligation by levying against a debtor's property or right to property held by a third-party, and a party in possession of such property that is levied against by DES is required to surrender the property on demand. Because we hold that Hartford is liable under its performance bond for the

unemployment insurance taxes that were not paid by Rainbow, ADOT is entitled to offset, for DES, the amount of such unpaid taxes against the contract balances otherwise payable to Hartford.

### C. Hartford's Liability for Interest and Penalties

■ Hartford finally argues that, even if its bond does cover Rainbow's pre-default unemployment insurance tax obligations, it is not obligated to pay the $200.00 in penalties and $2,594.06 in interest that ADOT is also offsetting, because ADOT has been in possession of the contract balance at all times. ADOT responds that Hartford, like any taxpayer who fails to make tax payments when due, is subject to interest and penalties. The trial court did not address this issue because it granted summary judgment in favor of Hartford. It is unclear from the record when the interest and penalties accrued and whether demand was ever made on Hartford to pay such taxes prior to the accrual of the interest and penalties. *See* 17 Am.Jur.2d, *Contractors' Bonds,* § 230 (1990) (general rule is that surety on a contractor's bond is not liable for interest on supplier's or subcontractor's claims unless a demand for payment has been made on it).

At oral argument of this appeal, the state conceded that Hartford is not liable for interest from January 14, 1988, when DES levied on the funds being held by ADOT, because the money was in the hands of the state. The state also conceded that Hartford is entitled to a credit for interest earned by the state on the contract retainage during the pendency of these proceedings. We hold that the same reasoning applies to penalties. Hartford cannot be liable for penalties when the state held the funds all along.

### III. CONCLUSION

Hartford is obligated under the performance bond for payment of the unemployment insurance taxes owed by Rainbow in connection with the bonded project, and ADOT is entitled to offset those taxes

against the contract balances and to pay the taxes to DES. We reverse the trial court's judgment and remand with directions to grant judgment in favor of ADOT with respect to its right to offset only the amount of unpaid taxes, but not penalties or interest. The trial court must also determine the amount of any credit to Hartford for interest earned by the state. The trial court should consider whether, in light of this opinion, ADOT is entitled to attorney's fees and costs incurred in the proceedings below. We also grant ADOT's request for reasonable attorney's fees on appeal pursuant to A.R.S. section 12–341.01 and section 34–222(B).

KLEINSCHMIDT, P.J., and EHRLICH, J., concur.