IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

CITY OF TEMPE, a municipal corporation; ELIZABETH CHAVEZ,
Tempe Housing Services Manager, *Plaintiffs/Petitioners/Appellants*,

*v.*

STATE OF ARIZONA, a body politic, and MARK BRNOVICH,[1] in his
capacity as Attorney General for the State of Arizona,
*Defendants/Respondents/Appellees.*

No. 1 CA-CV 14-0282

FILED 6-4-2015

Appeal from the Superior Court in Maricopa County
No. CV2012-013761
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Tempe City Attorney's Office, Tempe
By Judith R. Baumann
*Counsel for Plaintiffs/Petitioners/Appellants*

Arizona Attorney General's Office, Phoenix
By Ann R. Hobart
*Counsel for Defendants/Respondents/Appellees*

---

[1]     We amend the caption to reflect the current Arizona Attorney
General, and order the use of this caption for all further proceedings on
appeal.

---

## OPINION

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge John C. Gemmill and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1        In this case, the City of Tempe (Tempe) challenges the authority of the Arizona Attorney General (AAG) to investigate a complaint alleging discriminatory housing practices against a municipal corporation. Because a municipal corporation is a "person" subject to the Arizona Fair Housing Act (AFHA), Ariz. Rev. Stat. (A.R.S.) §§ 41-1491[2] to -1491.37, the AAG can investigate a complaint against Tempe alleging housing discrimination. Accordingly, we affirm the trial court's grant of summary judgment in favor of the State and the AAG and the award of fees under A.R.S. § 12-348.01.

### FACTS[3] AND PROCEDURAL HISTORY

¶2        Tempe is a municipal corporation that, *inter alia*, operates Tempe Housing Services (THS), a public housing agency. THS administers the Section 8 Housing Choice Voucher Program (HCVP) through which the U.S. Department of Housing and Urban Development (HUD) provides rental subsidies to eligible families and individuals living in approved housing units. As required by federal statute, Tempe adopted a plan for administering the voucher program, which provides that THS shall "comply fully with all Federal, State, and local nondiscrimination laws . . . from the time a prospective tenant first applies [to the voucher program] through a voucher being given." *See* 42 U.S.C. § 3604 (prohibiting

---

[2]       Absent material revisions from the relevant date, we cite a statute's current version.

[3]       "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2 (App. 1998).

discrimination in the sale or rental of housing); 24 C.F.R. § 982.53 (requiring administrator of HCVP to comply with certain anti-discrimination laws).

¶3	The Arizona legislature adopted the AFHA in 1991 and tasked the AAG with investigating and enforcing complaints brought thereunder.[4]  A.R.S. §§ 41-1491.09, -1491.22(A), -1491.24, and -1491.34. Additionally, through a Memorandum of Understanding, HUD declared the AFHA to be "substantially equivalent" to the federal Fair Housing Act (FHA), 42 U.S.C. §§ 3601 to 3631.  As a result, HUD may refer local FHA complaints to the AAG for investigation.  *See* A.R.S. § 41-1491.24(A).

¶4	In June 2012, Ron Bircher filed a fair housing complaint against Tempe with the AAG; Tempe then dual-filed the complaint with HUD.  Pursuant to the Memorandum of Understanding, HUD referred Bircher's complaint under the FHA to the AAG for investigation.  Bircher later amended his complaint to provide additional details in support of his allegation that his application for a housing voucher was denied based upon an alleged disability, and to add Elizabeth Chavez, a THS manager, as an additional respondent.

¶5	Upon receiving Bircher's complaint, the AAG sent Tempe and Chavez a "Notice of Charge of Discrimination" and requested Tempe provide it with a position statement.  Tempe resisted the investigation and ultimately filed a complaint in the superior court seeking declaratory and special action relief, asserting the AFHA did not authorize the AAG to investigate a complaint made against a municipal corporation.[5]

¶6	The parties filed cross-motions for summary judgment, disputing three issues: (1) whether Tempe and Chavez are "persons" within the meaning of A.R.S. § 41-1491(9); (2) whether Tempe engages in conduct that could constitute a discriminatory housing practice under the AFHA; and (3) whether the AAG abused its discretion in refusing to summarily dismiss Bircher's complaint.

---

[4]	The AAG performs these tasks through the Civil Rights Division of the AAG's Office.  For simplicity, we refer to the State, the AAG, the office of the AAG, and the AAG's employees and agents as AAG.

[5]	Tempe also sought injunctive relief to prohibit the AAG from issuing subpoenas to Tempe and its employees for documents and testimony, an issue not before us on appeal.

¶7        After oral argument on the cross-motions, the trial court found: (1) municipal corporations are subject to the requirements of the AFHA, (2) Tempe, a municipal corporation, engages in conduct regulated by the AFHA, and (3) the AAG did not abuse its discretion or act arbitrarily and capriciously by declining to dismiss Bircher's complaint without an investigation.  The court also made specific findings that the AAG is mandated to conduct an investigation, and "Tempe thwarted the investigation," such that it could not "now complain that the [AAG] abused his discretion by not dismissing the complaint when the investigation [was] not complete."  Accordingly, the court granted the State's summary judgment motion and dismissed Tempe's complaint.  The State then applied for its attorneys' fees under A.R.S. § 12-348.01, which the court granted in the amount of $108,090.  Tempe timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## STANDARD OF REVIEW

¶8        Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a); *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 115, ¶ 14 (App. 2008).  Even where the facts are not disputed, as here, summary judgment is improper "if the evidence of record does not demonstrate that the movant is entitled to judgment as a matter of law." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 291, ¶ 12 (App. 2010).  We review *de novo* the grant of summary judgment.  *Hourani v. Benson Hosp.*, 211 Ariz. 427, 432, ¶ 13 (App. 2005).

## DISCUSSION

I.        **A Municipal Corporation is a "Person" Under A.R.S. § 41-1491(9).**

¶9        The AFHA provides "[a] person may not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to any buyer or renter because of a disability."  A.R.S. § 41-1491.19.  The legislature adopted the AFHA with the intent to "undertake vigorous steps to provide equal opportunity in housing; . . . and obtain substantial equivalency with the federal government's housing discrimination enforcement efforts." 1991 Ariz. Sess. Laws, ch. 181, § 1.  Therefore, The AFHA defines "person" as "one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, receivers, fiduciaries, banks, credit unions and financial institutions."  A.R.S. § 41-1491(9).  Tempe argues that, as a municipal corporation, it is not a "person"

4

within the meaning of A.R.S. § 41-1491(9), and therefore is not subject to the AFHA.  We review *de novo* issues of statutory construction.  *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, L.L.C.*, 236 Ariz. 363, 365, ¶ 7 (2015).

**¶10**　　　　When interpreting a statute, we initially look to the language of the statute itself as the most reliable indicator of the legislature's intent.  *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003); *Walker v. City of Scottsdale*, 163 Ariz. 206, 209 (1989).  And, "when the language is clear and unambiguous, and thus subject to only one reasonable meaning, we apply the language without using other means of statutory construction."  *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶ 8 (2013).

**¶11**　　　　The AFHA expressly defines "person" to include "corporations."  A.R.S. § 41-1491(9).  Although a municipal corporation is not specifically included as a "person," the term "corporation" is commonly understood to include municipal corporations.  *See Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 327, ¶ 14 (2011) (noting "the term 'corporation' may embrace both private and public entities"); *Sumid v. City of Prescott*, 27 Ariz. 111, 114-16 (1924) (holding the term "corporation" under Employers' Liability Law applies to municipal corporations).  Therefore, the plain language of the statute includes Tempe as a "person" intended to be regulated under the AFHA.

**¶12**　　　　We are further persuaded in this regard by federal law indicating a corporation is a "person" within the meaning of the AFHA.  *See Canady v. Prescott Canyon Estates Homeowners Ass'n*, 204 Ariz. 91, 93 n.3, ¶ 9 (App. 2002) (stating federal case law interpreting similar provisions of the FHA is persuasive in interpreting the AFHA) (citations omitted); *see also Hartford Accident & Indem. Co. v. Ariz. Dep't of Transp.*, 172 Ariz. 564, 568 (App. 1992) ("When our legislature models a statute after that of the federal government, relevant federal judicial interpretations are persuasive in interpreting the Arizona statutory counterpart . . . if the construction given by the federal courts is based on the same wording.") (citing *SCA Constr. Supply v. Aetna Cas. & Sur. Co.*, 157 Ariz. 64, 66 (1987)).[6]  When the AFHA was enacted, it was well-established under federal case law that municipalities are included in the FHA definition of "person."  *Keith v.*

---

[6]　　　The AFHA includes three entities in its definition of "person" not found within the FHA version — banks, credit unions, and financial institutions — and omits bankruptcy trustees.  *Compare* A.R.S. § 41-1491(9) *with* 42 U.S.C. § 3602(d).  However, both include "corporations" within their definition.

*Volpe*, 858 F.2d 467, 482 (9th Cir. 1988) ("The [FHA] applies to municipalities."); *United States v. City of Parma*, 661 F.2d 562, 571-72 (6th Cir. 1981) (holding a municipality is a "person" that could be sued under the FHA); *United States v. City of Black Jack*, 508 F.2d 1179, 1183-84 (8th Cir. 1974) (same); *see also Village of Bellwood v. Gladstone Realtors*, 569 F.2d 1013, 1020 n.8 (7th Cir. 1978) ("The Village is a municipal corporation, and we see no reason . . . to construe [the FHA] to exclude that type of corporation."), *abrogated on other grounds*, *Village of Bellwood v. Dwivedi*, 895 F.2d 1521 (7th Cir. 1990).

¶13 Tempe contends, however, that the legislature can differentiate between public and private entities in statutes, and because it did not specifically include both, the legislature intended to exclude municipalities from the definition of "person" under the AFHA. *See Braden*, 228 Ariz. at 327, ¶ 16 (noting courts may not extend liability to entities "'who do not fall within the categories of potential defendants described by the statute'") (quoting *Hagert v. Glickman, Lurie, Eiger & Co.*, 520 F. Supp. 1028, 1034 (D. Minn. 1981)). We do not find *Braden* controlling or instructive here. In *Braden*, our supreme court interpreted the statutory definition of "enterprise" to determine whether the State could be a defendant to an action brought under the Adult Protective Services Act, which was not modeled after a federal statutory scheme. 228 Ariz. at 326, ¶ 10. Here, we do not consider whether Tempe is a "legal entity," but rather, whether it is a "corporation" within the AFHA's definition of "person." Indeed, *Braden*'s holding is limited to the proposition that the legislature specifically mentions public actors "when it intends their inclusion in a list that uses the general category of 'legal entity.'" *Id.* at 327, ¶ 15. Moreover, the *Braden* majority specifically acknowledges that the term "corporation" logically may include both public and private entities. *Id.* at ¶ 14.

¶14 Tempe further contends that other articles within the Arizona Civil Rights Act, A.R.S. §§ 41-1401 to -1493.04, of which the AFHA is included, list public entities within their respective definitions of "person," evidencing the legislature's ability to do so when it intends. We do not find this point persuasive where the language of the statute at issue closely mimics its federal counterpart.

¶15 Accordingly, we hold that a municipal corporation is a "person" within the meaning of A.R.S. § 41-1491(9). We also conclude

Chavez, as an individual, is a proper respondent.[7]  *See* A.R.S. § 41-1491(9) (defining "person" to include "one or more individuals").

## II.    Tempe Engages in Conduct Subject to the AFHA.

¶16        The AFHA provides "[a] person may not discriminate in the sale or rental or otherwise make unavailable or deny a dwelling to any buyer or renter because of a disability of . . . that buyer or renter."  A.R.S. § 41-1941.19(A)(1).  It is undisputed that Tempe, through THS, does not participate in the direct sale or rental of housing.  The question, though, is whether its administration of the HCVP is such an action that might "otherwise make unavailable or deny a dwelling" to a person.  We review this question *de novo*.  *BMO Harris*, 236 Ariz. at 365, ¶ 7.

¶17        The HCVP is a federal program intended to assist low-income families, the elderly, and the disabled in affording "decent, safe, and sanitary housing" through the provision of rental subsidies.  24 C.F.R. § 982.1(a)(1).  The program is generally administered by State or local governmental entities, such as THS, called public housing agencies.  *Id.*  The public housing agencies determine an applicant's eligibility for the program and whether the applicant's rental unit meets certain quality standards.  *Id.* § 982.1(a)(1)-(2), (b)(2).  If an applicant gains approval, the public housing agency contracts with the owner of the approved housing property to make rent payments on the person's behalf.  *Id.* § 982.1(a)(2), (b)(2).  The funds for the rental subsidies are provided to the public housing agencies by HUD.  *Id.* § 982.1(a)(1).

¶18        The purpose of the HCVP is to help eligible persons obtain housing they would otherwise be unable to afford.  As a practical matter, denying an application to participate in the program has the ultimate effect of making certain dwellings "otherwise unavailable" to applicants.  Therefore, the administration of the HCVP, which includes the authority to grant or deny assistance, is an activity that renders the AFHA applicable to public housing agencies like THS.  *See Hinneberg v. Big Stone Cnty. Hous. & Redevelopment Auth.*, 706 N.W.2d 220, 224-25 (Minn. 2005) (concluding "the broad phrase in the FHA[] — 'to otherwise make unavailable or deny' a dwelling — makes the FHA[] applicable to public housing authorities administering [federal] housing voucher programs").

---

7        We take no position on the merits of Chavez's potential liability.

### III. The AAG Did Not Err by Refusing to Summarily Dismiss Bircher's Complaint.

**¶19** Tempe argues the AAG acted arbitrarily and capriciously by declining to dismiss Bircher's complaint. We review the AAG's decision to continue its investigation of Tempe *de novo* to determine whether it was supported by law, or whether it was arbitrary, capricious or an abuse of discretion. *Sharpe v. AHCCCS*, 220 Ariz. 488, 492, ¶ 9 (App. 2009).

**¶20** Bircher's amended complaint against Tempe alleged the following: In July 2011, Bircher applied for a housing voucher from THS. In mid-August 2011, THS informed Bircher by letter that his application had been lost and directed him to file a new one. When he visited THS to resubmit his application, Chavez refused to accept the resubmission, and ordered him to leave, eventually contacting the police who escorted Bircher from the premises. Bircher alleged the ultimate denial of his application was the result of his disability.

**¶21** When the AAG initiated an investigation into Bircher's complaint, Tempe argued it did not engage in activities covered by the AFHA, an argument we have rejected above. In addition, Tempe provided the AAG with two documents it believed refuted Bircher's allegations: an affidavit from Chavez that stated the underlying incident never occurred, and a workplace injunction against harassment ordering Bircher to stay away from the THS premises. Based upon this documentation, Tempe argued that even had the incident occurred, any actions by its employees were fully justified, and could not form the basis of a complaint that Bircher was deprived of housing because of his disability. The AAG declined to dismiss the complaint without completing the investigation.

**¶22** The AAG is tasked with administering the AFHA. A.R.S. § 41-1491.07. To this effect, "[t]he attorney general shall receive, investigate, seek to conciliate and act on complaints alleging violations of th[e AFHA]." A.R.S. § 41-1491.09; *see also* A.R.S. § 41-1491.22(A) ("The attorney general shall investigate alleged discriminatory housing practices."). Once a complaint has been filed, the AAG is mandated to "promptly investigate the allegations set forth in the complaint." A.R.S. § 41-1491.24(A)-(B); *see also* Ariz. Admin. Code (A.A.C.) R10-2-120(A). The mandate applies to "all complaints." A.R.S. § 41-1491.24(B).

**¶23** The purpose of the investigation is to "[o]btain information concerning the events . . . identified in the complaint," "[d]ocument policies or practices of the respondent," and "[d]evelop factual data" necessary to

determine whether the fair housing act has been violated. A.A.C. R10-2-120(A). In furtherance of this purpose, the AAG is authorized to "propound[] interrogatories, conduct[] formal and informal interviews of witnesses, conduct[] on-site inspections of the property and dwelling, and issu[e] subpoenas and subpoenas duces tecum." A.A.C. R10-2-120(B). After completing its investigation, the AAG must consider "the facts concerning the alleged discriminatory housing practice provided by complainant and respondent or otherwise disclosed during the investigation," and "determine whether reasonable cause exists to believe that a discriminatory housing practice has occurred or is about to occur." A.A.C. R10-2-124; *see also* A.R.S. § 41-1491.29(A). If the AAG concludes no reasonable cause exists, it "shall promptly dismiss the complaint and give written notice of the dismissal" to the parties. A.R.S. § 41-1491.30.

¶24        Based upon this statutory and regulatory framework, the AAG was within its discretion to continue the investigation beyond receipt of the documents provided by Tempe. It is the AAG's duty to investigate *all* complaints, and that duty cannot be circumvented by a respondent who simply denies the claim and unilaterally declares it resolved on the basis of the limited information the respondent chooses to provide. Tempe has shown no arbitrary or capricious action by the AAG.

## IV.    Attorneys' Fees Award

### A.    Fees Were Required Under A.R.S. § 12-348.01.

¶25        The AAG sought and was awarded its attorneys' fees in the amount of $108,090 pursuant to A.R.S. § 12-348.01, representing approximately 360 hours at $300 per hour. Section 12-348.01 provides:

> Notwithstanding § 12-348, in addition to any costs that are awarded by statute, if an agency, department, board or commission of this state, a city, town or county, governmental officer acting in the officer's official capacity or an association whose membership is primarily composed of governmental entities files a lawsuit against this state, or an agency, department, board or commission of this state, a city, town or county, governmental officer acting in the officer's official capacity or an association whose membership is primarily composed of governmental entities, *the court shall award reasonable attorney fees to the successful party in the action.*

A.R.S. § 12-348.01 (emphasis added). Tempe argues the award of fees to the AAG was error because A.R.S. § 12-348.01 is not applicable here, where its

complaint for declaratory, injunctive, and special action relief against the AAG was "arguably" not a lawsuit within the meaning of the statute because it was prompted by the AAG's investigation. We review both the AAG's entitlement to fees and issues of statutory interpretation *de novo*. *BMO Harris*, 236 Ariz. at 365, ¶ 7; *Thompson v. Corry*, 231 Ariz. 161, 163, ¶ 4 (App. 2012). Again, "when the language [of a statute] is clear and unambiguous, and thus subject to only one reasonable meaning, we apply the language." *Baker*, 231 Ariz. at 383, ¶ 8.

**¶26** Section 12-348.01 applies if the underlying proceeding was a "lawsuit." In the absence of legislative intent to the contrary, we construe words "according to the[ir] common and approved use." A.R.S. § 1-213. The word "lawsuit" is "a vernacular term for a suit." *Cannon v. Hirsch Law Office, P.C.*, 222 Ariz. 171, 177, ¶ 19 (App. 2009) (citing *In re Barrett Ref. Corp.*, 221 B.R. 795, 802-03 (W.D. Okla. 1995), and Black's Law Dictionary (6th ed. 1991)) (internal quotations omitted). Suit is defined as "[a]ny proceeding by a party or parties against another in a court of law." Black's Law Dictionary (10th ed. 2014).

**¶27** It is clear the filing of Tempe's complaint seeking declaratory and special action relief in the superior court initiated an adversary proceeding, or lawsuit, against the AAG. With that, an award of fees to the prevailing party was mandatory. A.R.S. § 12-348.01. Accordingly, the trial court properly found the AAG, as the prevailing party, was entitled to fees.[8]

## B. Calculation of Hourly Rate

**¶28** Finally, Tempe argues the trial court erred by calculating the award of attorneys' fees based upon a prevailing market rate of $300 per hour. Tempe contends this hourly rate was not supported by sufficient evidence. We review the court's fee award for an abuse of discretion. *Charles I. Friedman, P.C. v. Microsoft Corp.*, 213 Ariz. 344, 350, ¶ 17 (App. 2006). We will affirm if there is any reasonable basis that supports the trial

---

[8] Tempe argues A.R.S. § 12-348(A)(3) and (4), which preclude the recovery of attorneys' fees by the State or state agency, is a more specific statute that should apply in this situation. The argument ignores the plain directive by the legislature that A.R.S. § 12-348.01 shall apply "notwithstanding § 12-348." For that same reason, we reject Tempe's arguments that the hourly rate used to calculate a fee award and the fee award cap found in A.R.S. § 12-348(E)(2) and (4) are applicable here.

court's decision. *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 569, ¶ 9 (App. 2007).

¶29 In *State ex rel. Corbin v. Tocco*, this Court held that the prevailing market rate standard shall be used to calculate the State's reasonable attorneys' fees when represented by the AAG. 173 Ariz. 587, 591-92 (App. 1992) (citing *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855, 861-62 (7th Cir. 1981)); *see Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 331-32, (App. 1993) (citing *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 608 (1989)). A determination of the prevailing market rate requires consideration of "the difficulty and quality of the work performed, the experience and reputation of counsel, and the nature and significance of the result." *Kadish*, 177 Ariz. at 332.

¶30 Here, the AAG supported its application for attorneys' fees with an affidavit adequately explaining the basis for the fee request and the appropriateness of a prevailing market rate of $300 per hour. Specifically, the affidavit explained that in 2001, the individual hourly rate of assistant attorneys general with fifteen or more years of experience was $185; an attached 2013 Arizona State Bar study found hourly billing rates had risen at a rate of 3.5% per year since 2001. Based upon these numbers, adjusted slightly upward, the AAG calculated $300 as a reasonable hourly rate of compensation for the two assistant attorneys general that worked on the matter.

¶31 The rate advanced by the AAG is supported by the documentation. Of the two assistant attorneys general who submitted billing statements, one had over fourteen years of experience, and one had more than twenty-five years of experience. The State Bar study reported a mean hourly billing rate for attorneys with eleven to fifteen years' experience at $279, while attorneys with greater than twenty-five years' experience had a mean hourly billing rate of $320. As the two attorneys billed for nearly identical hours, a $300 average hourly rate was in line with the average market rate.

¶32 Once the AAG established an entitlement to fees and met the minimum requirements in an application and affidavit, the burden shifted to Tempe to demonstrate the impropriety or unreasonableness of the requested fees.[9] *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 223,

---

[9] Tempe does not contend on appeal that the AAG's attorneys' fee affidavit was deficient. *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183,

¶ 29 (App. 2012) (citing *Corbin*, 173 Ariz. at 594).  But Tempe offered no evidence or persuasive argument to controvert the reasonableness of the hourly rate provided by the AAG.  *See Corbin*, 173 Ariz. at 594 (noting opposing party cannot simply claim that the rates submitted are too high) (citing *Arizona v. Maricopa Cnty. Med. Soc'y*, 578 F. Supp. 1262, 1264 (D. Ariz. 1984)).

**¶33**     Tempe instead contends the hourly rate for the AAG should be capped at $175 to remain consistent with *Thompson*, 231 Ariz. at 163, ¶ 3.  We disagree.  The *Thompson* court adopted an hourly fee of $175, pursuant to A.R.S. § 25-324 and Arizona Rule of Family Law Procedure 92(E)(2), to award fees to a party represented by counsel on a *pro bono* basis.  *Id.* at 167, ¶ 22.  However, the opposing party did not contest that $175 was the prevailing market rate, and there is no discussion to provide guidance as to the appropriateness of this amount.  Moreover, *Thompson* addressed the prevailing market rate for representation in family court, and Tempe has not illustrated that such services are similar to the type of representation provided by the AAG here.  *Id.* at 162, 167, ¶¶ 1, 22 (noting hourly rate should be calculated in reference to "the prevailing market rate in the community for similar services").

**¶34**     To summarize, the AAG was entitled to an attorneys' fee award under A.R.S. § 12-348.01, and Tempe does not dispute that the $108,090 award was calculated correctly when based upon a prevailing market rate of $300 per hour.  Because a reasonable basis existed for the prevailing market rate, and by extension, the total award, we affirm the trial court's fee award.  *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004) ("An award of attorney fees is left to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Hale v. Amphitheater Sch. Dist. No. 10*, 192 Ariz. 111, 117, ¶ 20

188 (App. 1983) (requiring under Arizona law a fee application be supported by an affidavit that indicates "the type of legal services provided, the date the service was provided, the attorney providing the service, . . . and the time spent in providing the service").  Nor does Tempe adequately contend the hours billed were excessive, as it only generally argues on appeal that the hours were excessive because the case lasted approximately one year and was settled on cross-motions for summary judgment.  A party opposing a fee request does not meet its burden "'merely by asserting broad challenges to the [fee] application.'"  *In re Indenture of Trust Dated Jan. 13, 1964*, 235 Ariz. 40, 53, ¶ 47 (App. 2014) (quoting *Corbin*, 173 Ariz. at 594).

(App. 1998) ("We will not disturb the trial court's discretionary award of fees if there is any reasonable basis for it.").

## CONCLUSION

¶35        For the foregoing reasons, we affirm both the trial court's grant of summary judgment and its award of attorneys' fees in favor of the AAG.

¶36        The AAG requests its costs and reasonable attorneys' fees on appeal pursuant to A.R.S. § 12-348.01.   As the prevailing party and consistent with our holding, we grant the AAG's request subject to compliance with ARCAP 21(b).



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama