845 P.2d 513

STATE of Arizona, ex rel., Robert K. CORBIN, Attorney General, Plaintiff–Appellee,

v.

Joseph Frank TOCCO, Defendant–Appellant.

No. 1 CA–CV 89–611.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 8, 1992.

** The Honorable Melvyn T. Shelley was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Constitution article VI, section 20.

Grant Woods, Atty. Gen. by Cameron H. Holmes, Charles R. Johnson, Asst. Attys. Gen., Phoenix, for plaintiff-appellee.

Victor A. Aronow, Phoenix, for defendant-appellant.

## OPINION

GRANT, Presiding Judge.

Joseph Tocco ("Tocco") appeals from attorney's and investigator's fees and costs imposed against him in a civil RICO action brought by the State of Arizona (the "State"). We hold that the prevailing market rate is the amount to be used to determine the award to the State for work of its attorneys general in RICO (racketeering) cases.

We affirm the trial court's assessment of attorney's and investigator's fees and costs against Tocco.

## ISSUES

The issues raised by Tocco on appeal are:

(1) whether the trial court properly awarded attorney's fees to the State based on a reasonable market rate rather than a rate determined by the actual salaries of the assistant attorneys general;

(2) whether the affidavits in support of the State's applications for attorney's fees met the applicable specificity requirements;

(3) whether certain of the fees and costs requested in the State's application should have been apportioned to Tocco's co-defendants; and

(4) whether the affidavits in support of the investigator's fees met the applicable specificity requirements.

## FACTS AND PROCEDURAL BACKGROUND

On October 5, 1982, the State instituted this action against Tocco and various other defendants alleging numerous civil violations of Arizona's Racketeering Act, Ariz. Rev.Stat.Ann. ("A.R.S.") section 13–2301, et seq. On December 20, 1982, Tocco was charged in a thirteen-count criminal RICO proceeding in Maricopa County Superior Court that paralleled the civil RICO matter. Tocco entered into a plea agreement in connection with the criminal indictments, as subsequently amended, pleading guilty or "no contest" to a total of nineteen felony counts in November 1983. Judgments of guilt and sentences were entered against Tocco on August 29, 1984. The judgments of guilt and sentences were affirmed by this court. State v. Tocco, 1 CA–CR 8315

*et al.* (Memorandum Decision, December 2, 1986). A petition for writ of habeas corpus was dismissed by the federal district court in *Tocco v. Lewis,* D.C. No. CV-88-0448-Phx-RC, and the dismissal was affirmed by the Ninth Circuit in a memorandum decision, 915 F.2d 1581 (1990).

On February 28, 1985, the State moved for partial summary judgment in the civil RICO action, requesting a finding of liability based upon the prior pleas, forfeiture of certain real property and the imposition of attorney's and investigator's fees and costs against Tocco. The partial summary judgment was granted on September 9, 1985. The trial court's order granting the partial summary judgment also ordered that Tocco was liable for all expenses for the criminal and civil investigations and for prosecution of the acts described in his plea agreements. However, the order did not delineate an hourly rate for the calculation of such fee award. Tocco appealed the grant of summary judgment in favor of the State, and this court affirmed both the entry of summary judgment and the award of attorney's fees, investigative expenses and costs pursuant to A.R.S. section 13-2314. *State v. Tocco,* 1 CA-CIV 8652 (Memorandum Decision, May 19, 1987). Although, in the prior appeal, this court awarded the State its attorney's fees and costs on appeal, we remanded the case to the trial court for determination of the *amount* of the fees, expenses and costs due at the trial court level because the trial court had not yet determined such amount.

■ Following this court's remand to the trial court, the State filed its application for attorney's and investigative fees and costs.

The State's application requested that the award of attorney's fees be calculated at an hourly rate of $80.00, which, the application stated, was a reasonable hourly rate based on the prevailing market rate for attorney's fees for similar work. Attached to the State's application were affidavits describing the dates and number of investigative hours expended on the matter by the Maricopa County Sheriff's Department and the Arizona Department of Public Safety, as well as affidavits from the attorneys on the case attesting to the expenditure of the number of attorney hours on the action against Tocco and time entries describing the legal work done.[1]

In his written memorandum in opposition to the State's application, Tocco argued that attorney's fees and costs and investigative expenses could not constitutionally be awarded against a defendant in a criminal matter;[2] that an appropriate basis for an award of attorney's fees would be the hourly rate of counsel as determined by actual, annual salary, not $80.00 per hour; and that 42.2 hours of time listed by the State's attorneys were either not relevant to the State's case against Tocco or the descriptions were too cryptic to establish their relevancy. In its written reply to Tocco's memorandum, and at the subsequent evidentiary hearing on the State's application, the State provided an explanation of the relevancy, materiality and meaning of the challenged attorney time entries.

At the evidentiary hearing, Tocco for the first time also argued that the requests for fees for investigators employed by the Maricopa County Sheriff's Office and Department of Public Safety failed to meet

---

**1.** Although these affidavits and time entries were not attached to the application that was sent to this court as part of the record on appeal, it is apparent from the record that the attachments were included in the applications possessed by both parties below, as well as the trial court. In addition, the affidavits and time sheets attached to the application were included in the request for attorney's fees that the State made in this court in the prior appeal of this matter. This court may take judicial notice of records and other appellate proceedings in the same case. *Holguin By and Through Holguin v. Aetna Cas. and Surety Ins. Co.,* 156 Ariz. 9, 11 n. 1, 749 P.2d 918, 920 n. 1 (App.1986). Because

we have access to the affidavits and time sheets being questioned here in this court's file relating to the prior appeal, we have the appropriate evidence before us to decide the sufficiency of the State's application.

**2.** Tocco has not raised the issue of the constitutionality of the award in this appeal, presumably because the award was affirmed by this court in the previous memorandum decision (1 CA-CV 8652) and would be barred by the doctrine of *res judicata* here. The only issue remanded by our prior decision was the *amount* of the award, not the award itself.

applicable specificity requirements. Although all of the relevant attorneys and investigators were present at the evidentiary hearing, Tocco questioned no one and neither party presented any evidence other than the State's explanation of the specifically objected-to attorney time entries. The parties did stipulate at the hearing that, if the court chose to award attorney's fees based upon a reasonable market value rate, $80.00 per hour, the amount requested by the State in its application, was an appropriate rate for the time of the assistant attorneys general on the case.

Subsequent to the evidentiary hearing, the trial court entered judgment against Tocco for $388,201.04 [3] in attorney's and investigator's fees and costs, the full amount requested by the State. The substituting trial judge who heard the evidentiary hearing stated in her minute entry that the market rate was not an inappropriate measure for the calculation of the attorney's fees in this case and further noted that Tocco had failed to conduct discovery, take advantage of the evidentiary hearing he requested, or present any evidence to indicate that the billings contained irrelevant or immaterial claims. Tocco then instituted this appeal.

## DISCUSSION

### 1. *Market Rate v. Salary-based Hourly Rate*

■ Tocco first argues that the trial court erred in determining the amount of attorney's fees to be awarded to the State because the proper method of calculating such an award was to use an hourly rate based upon the actual salaries of the assistant attorneys general rather than the prevailing market rate. The trial court calculated the attorney's fee award by multiplying $80.00 an hour, the stipulated prevailing market rate, by the number of hours spent on the case by the State's counsel pursuant to the application. This method of constructing a reasonable fee, multiply-

ing the hours expended by a reasonable hourly rate of compensation, is known as the "lodestar." *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 186 n. 5, 673 P.2d 927, 930 n. 5 (App.1983). This method is often used in cases, such as the present one, where fees are not paid on an hourly basis. *Id.*

■ In using the prevailing market rate as the reasonable hourly rate of compensation for purposes of the lodestar calculation, the trial court here followed the general rule for calculating attorney's fee awards made pursuant to a statute authorizing the recovery of "reasonable" fees. This rule, used particularly in civil rights, antitrust cases and other public benefit cases, provides that prevailing market rates and not the actual costs of legal services are the appropriate measure for an award of reasonable attorney's fees, even when the party being awarded the fees has been represented by salaried government or public non-profit counsel. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080 (3rd Cir.1988); *Hamilton v. Daley*, 777 F.2d 1207 (7th Cir.1985); *Campbell v. Cook*, 706 F.2d 1084 (10th Cir.1983); *Arizona v. Maricopa County Medical Society*, 578 F.Supp. 1262 (D.Ariz. 1984), *Arnold v. Dept. of Health Services*, 160 Ariz. 593, 775 P.2d 521 (1989).

Some of the reasons for awarding attorney's fees to the government based upon prevailing market rates even where government counsel has been used were discussed by the court in *Illinois v. Sangamo Constr. Co.*, 657 F.2d 855 (7th Cir.1981). That case was an antitrust action in which attorney's fees were awarded to the State of Illinois, which had been represented in the action by the Illinois Attorney General. In determining that the prevailing market rate was the appropriate method for determining the amount of the fee award, the court in *Sangamo* first noted that the enti-

---

**3.** The State's application actually requested attorney's and investigator's fees and costs in the amount of $392,373.04, but the State later withdrew its claim for $4,168.00 for the time of one of its attorneys, because the State had been unable to obtain an affidavit from that attorney at the time it filed its application.

tlement to reasonable attorney's fees is that of the plaintiff, not of its attorney, and that, therefore, the amount the plaintiff (i.e., the State) actually pays for its attorney is irrelevant because "the determination of what is a 'reasonable' fee is to be made without reference to any prior agreement between the parties." 657 F.2d at 861. In addition, the court noted that "[t]he initial use of an objective standard of reasonableness, i.e., generally prevailing market rates, is far preferable to extensive judicial scrutiny of private fee arrangements or of the internal economics of the Attorney General's office." 657 F.2d at 862. Finally, the court stated that the use of prevailing market rates does not unduly burden defendants because the rate would be applicable if the plaintiff had chosen to be represented by private counsel rather than its Attorney General. *Id.* The reasons discussed in *Sangamo* for the use of the prevailing market rate as a basis for establishing the State's reasonable attorney's fees also apply in this case.

We agree with the reasoning in *Illinois v. Sangamo.* We believe it places an undue burden on the Attorney General to require the complex financial calculations to determine a figure for overhead and pro rate that figure on a per-attorney basis. Moreover, these calculations would change every year as the Attorney General's budget changed. The time and expense of making these calculations and having a court review them is not warranted in order to determine reasonable attorney's fees. Nor do we believe that the state will be unjustly enriched by the use of the prevailing market rate standard. Since the prevailing market rate standard applies under Arizona's "private attorney general doctrine," we find no cogent reason why it should not apply to the public office of the Attorney General. *Arnold,* 160 Ariz. at 608, 775 P.2d at 536.

Another rationale for calculating the State's attorney's fee award based on the prevailing market rate is to encourage enforcement of the racketeering statutes. *Cf.,* Comment, *Attorneys' Fees to State Attorneys General in Antitrust Actions,* 62 B.U.L.Rev. 493–513 (1982). This incen-

tive is increased by the fact that, pursuant to A.R.S. section 13–2314.01, prosecution and investigative costs recovered by the State in racketeering cases are to be deposited in an anti-racketeering revolving fund to be administered by the Attorney General. This court discussed this type of incentive as a basis for awarding fees to a plaintiff who was represented by Community Legal Services in *Quine v. Godwin,* 132 Ariz. 409, 646 P.2d 294 (App.1982):

> The award of fees to legal aid offices and other groups furnishing *pro bono publico* representation promotes the enforcement of the underlying statutes as much as an award to privately retained counsel. Legal service organizations often must ration their limited financial and manpower resources. Allowing them to recover fees enhances their capabilities to assist in the enforcement of congressionally favored individual rights. [citations omitted]. Moreover, assessing fees against defendants in all circumstances may deter wrongdoing in the first place.

132 Ariz. at 414, 646 P.2d at 299, quoting *Rodriguez v. Taylor,* 569 F.2d 1231, 1245 (3rd Cir.1977). It is not unlike the incentive of the "private attorney general doctrine" which encourages public interest litigation to vindicate important public policy. *Arnold,* 160 Ariz. at 609, 775 P.2d at 537.

Tocco concedes that, in a private prosecution under A.R.S. section 13–2314, the plaintiff's reasonable attorney's fees would be determined according to the prevailing market rate pursuant to *Blum.* However, Tocco argues that this court's decisions in *Schweiger* and *Lacer v. Navajo County,* 141 Ariz. 392, 687 P.2d 400 (App.1984) require that an attorney's fee award to the State in an action in which it has been represented by the Attorney General's office must be limited to the actual portions of the assistant attorneys general's salaries allocable to prosecuting the case against him, plus overhead. Both of these cases relied upon by Tocco are distinguishable from the present action.

*Schweiger* was a dispute over the termination of a lease agreement. Judgment was entered in favor of the landlord and

was affirmed by this court. The landlord submitted an application for attorney's fees incurred on appeal, the basis for which was a provision in the lease contract stating that the landlord could recover from the tenant reasonable attorney's fees in connection with any legal proceeding in which the landlord should prevail. 138 Ariz. at 186, 673 P.2d at 930. In discussing the fee application, the court stated that the beginning point for the development of a reasonable attorney's fee award in commercial litigation is the determination of the actual billing rate which the lawyer charged in the matter. 138 Ariz. at 187, 673 P.2d at 931. The court noted that this was to be distinguished from the traditional measure for attorney's fee awards used in public rights litigation, which is the reasonable hourly rate prevailing in the community for similar work. *Id.* However, the court stated that, in litigation between fee-paying clients, there is no need to determine the prevailing market rate because "the rate charged by the lawyer to the client is the best indication of what is reasonable under the circumstances of the particular case." 138 Ariz. at 187–188, 673 P.2d at 931–932. Therefore, the court concluded that an application for fees in a commercial litigation matter should indicate the agreed upon hourly billing rate between the lawyer and the client so that the opposing party could then attempt to set forth reasons why the hourly billing rate was unreasonable. 138 Ariz. at 188, 673 P.2d at 932.

The State's action against Tocco is obviously not a commercial litigation matter involving two fee-paying clients. Therefore, the method approved by this court in *Schweiger* for the determination of a reasonable billing rate in commercial litigation is not applicable here.

In *Lacer v. Navajo County*, also relied upon by Tocco, Navajo County successfully defended an action against it by a purported landowner who had sought to obtain title to county land because of the county's alleged violation of certain deed restrictions encumbering the land. When the judgment was affirmed by this court, Navajo County filed a claim for attorney's fees and costs incurred on appeal pursuant to A.R.S. section 12–341.01(A) and Rule 21(c), Arizona Rules of Civil Appellate Procedure. The county's application requested fees at an hourly rate of $70.00. Although the court stated that the number of hours being claimed by the county was reasonable, it questioned the stated hourly rate of $70.00. The court explained

Although the hourly fee seems reasonable, A.R.S. § 12–341.01(B) [which limits an award of attorneys' fees awarded pursuant to A.R.S. § 12–341.01(A)] requires that the amount awarded "not exceed the amount paid or agreed to be paid." Under A.R.S. § 12–341.01(B), Navajo County cannot receive greater than its actual hourly cost, irrespective of the reasonableness of the hourly fee requested. The County's statement of cost provides simply: "Seventy Dollars per hour is a reasonable attorneys fee per hour." There exists no evidence as to the actual hourly cost incurred by the County. Thus, the statement of costs submitted by the County is insufficient in this regard.

141 Ariz. at 396, 687 P.2d at 404.

In an attempt to establish guidelines for the County in providing a basis for its stated hourly fee, the *Lacer* court stated that the billing rate should be the "share of the party's attorney's salaries which are allocable to the case based upon the time expended, plus allocated shares of the costs of office space, support staff, office equipment and supplies, law library and continuing legal education." *Id.*

Tocco claims that the guidelines approved by the court in *Lacer* for establishing the hourly rate of government counsel's fee should also be used in this case. However, the statute pursuant to which the attorney's fees were awarded in *Lacer*, A.R.S. section 12–341.01(A) and (B), differs from the statute pursuant to which the attorney's fee award was made here. Under those provisions, the court may not award an amount in excess of the amount paid or agreed to be paid. In the case at bar, Tocco was held to be liable for the State's reasonable costs and attorney's fees pursuant to A.R.S. sections 13–2314(A),

(D)(5) and 13–2314.01. Those statutes entitle the State to an order requiring Tocco to pay all costs and expenses of the prosecution and investigation of the racketeering offense, including reasonable attorney's fees. The reasonable attorney's fees recovered by the State under A.R.S. section 13–2314 need not be limited to the amount paid or agreed to be paid as in an award made pursuant to A.R.S. section 12–341.01(A). Therefore *Lacer* does not apply to this case in which the request for fees was made pursuant to A.R.S. sections 13–2314(A), (D)(5) and 13–2314.01. A rate of compensation based upon shares of salaries of the State's attorneys allocable to Tocco's case is not mandated by the RICO statutes and the trial court did not err in calculating the State's attorney's fee award based on the prevailing market rate.[4]

### 2. Sufficiency of Affidavits Regarding Attorney's Fees

■ Tocco next argues that the trial court improperly awarded the State all of its requested attorney's fees because the State's application for fees and accompanying affidavits failed to meet the applicable specificity requirements. This court developed guidelines for a proper attorney's fee application in *Schweiger v. China Doll.* In *Schweiger,* the court noted that the "affidavit of counsel should indicate the type of legal services provided, the date the service was provided, the attorney providing the service ... and the time spent in providing the service." 138 Ariz. at 188, 673 P.2d at 932.

■ Tocco concedes in his brief that the State's application met the minimal requirements of specificity as set forth in *Schweiger.* Because the State's application and affidavits admittedly met these requirements, it was Tocco's obligation to demonstrate why any of the billing entries were immaterial, irrelevant or otherwise unreasonable. As the court stated in *State of Arizona v. Maricopa County Medical Society,* 578 F.Supp. 1262 (D.Ariz.1984),

... [j]ust as the applicant cannot submit a conclusory application, an opposing party does not meet his burden merely by asserting broad challenges to the application. It is not enough for an opposing party simply to state, for example, that the hours claimed are excessive and the rates submitted too high.

578 F.Supp. at 1264, quoting *Nat. Ass'n of Concerned Vets v. Sec. of Defense,* 675 F.2d 1319, 1338 (D.C.Cir.1982).

Although Tocco requested an evidentiary hearing on the fee application, he conducted no discovery and presented no evidence at the hearing regarding the irrelevance of any particular entries. At the hearing and in his memorandum in opposition to the fee application, Tocco only questioned the relevancy of 4.5 specific hours of time billed and of 42.2 hours of billings in general. He otherwise stated that, given the size of the case, he could not be expected to review and determine the accuracy of all 2800 time entries. In its reply to Tocco's objection to the fee application and in the oral argument at the evidentiary hearing, the State gave an adequate explanation of the relevancy of the only time entries specifically challenged by Tocco.

This court considered a similar situation in *Inspiration Consol. Copper v. Arizona Dept. of Revenue,* 147 Ariz. 216, 709 P.2d 573 (App.1985). In that case, involving a taxpayer's suit to recover a refund of property tax overpayments, this court held that the trial court had not abused its discretion in awarding the taxpayer attorney's fees, expert witnesses' fees, costs and expenses. Concerning the amount of the award, the Department of Revenue argued only that the fees were *per se* unreasonable because the taxpayer was represented by a large corporate law firm and because "there were double billings, erroneous inclusions, items were sometimes lumped together with one statement of time, and extravagant meals." 147 Ariz. at 234, 709 P.2d at 591. In response, the court stated as follows:

---

**4.** Because the parties here stipulated that $80.00 per hour was the prevailing market rate for legal work such as that conducted by the assis-

tant attorneys general in this case, we need not determine whether the State met its burden of establishing the market rate.

All of the foregoing allegations are made without reference to the record or any factual detail as to the specific amount or specific items which are claimed to be excessive or not reimbursable. Under such circumstances, this court is not obligated to search the record to determine whether there is any basis for the claims raised by the Department.

*Id.*

The same lack of factual detail to support the objections to the fee application is evident in this case. As the trial judge in the present case stated in her minute entry,

[t]he defendant's last bastion is that "the billings submitted *may* contain items which are irrelevant or immaterial to the claim against Joseph Tocco." Alas, counsel has elected not to conduct discovery, or to take advantage of the evidentiary hearing he requested, to present information and facts to the court to indicate that the billings *actually* contain irrelevant or immaterial claims. Because no time has been demonstrated to be inappropriate, unrelated, irrelevant or immaterial, the court finds 3,188.2 hours expended by the attorneys was both reasonable and necessary.

■ The determination of the reasonableness of an award of attorney's fees is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Harris v. Reserve Life Ins. Co.*, 158 Ariz. 380, 384, 762 P.2d 1334, 1338 (App.1988). An abuse of discretion occurs where no reasonable basis exists in the record from which the trial judge could award the fees. *Id.* Because the State provided an adequate explanation for the only time entries that were questioned by Tocco, we find no abuse of discretion here.

### 3. *Apportionment of Fees and Costs to Codefendants*

■ Tocco also claims that, even if the State's application for attorney's fees satisfied all applicable specificity requirements, the trial court erred in awarding all of the requested fees and costs to the State because some fees and costs should have been apportioned to the numerous other co-defendants in the civil RICO action. However, the State, in its fee application stated that all of the attorney's fees and costs requested from Tocco were in connection with the civil and criminal investigation and prosecution of acts described in Tocco's plea agreements and the appendices thereto. In fact, the State said in the application that it had excluded hundreds of hours from the attached time records in an effort to submit only a minimum number of hours and reduce any burden connected with review of the time records.

As to time entries relating to co-defendants to which Tocco specifically objected, the State explained that the time was relevant to the case against Tocco either because such co-defendants were also witnesses against Tocco or were sued as co-conspirators of Tocco. Regarding time spent on such other parties, we concur with the following statement by the court in *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1215 (3rd Cir.1978):

We recognize, of course, "that legal services fairly devoted to the [case against Wilson] are compensable even though those very same legal services also supported the prosecution of the case" against the other four defendants ... [citation omitted]. For example, it was necessary to establish the existence of a conspiracy, in order to establish Wilson's liability as a member of that conspiracy, and proof of the conspiracy may have required evidence concerning the activities of the other defendants. Such hours devoted in part to the case against other defendants may be fairly charged to Wilson, so long as the plaintiff can establish that such hours also were fairly devoted to the prosecution of the claim against Wilson.

The State's Application and Affidavit establishes that all of the time requested therein was devoted to the prosecution of the claim against Tocco. As mentioned previously, Tocco presented no evidence that any of the time entries were unrelated to the case against him or involved claims in which Tocco had only a peripheral role.

*See, e.g., Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483 (11th Cir.1987) (court approved apportionment to protect passive co-defendant deemed to have only a "peripheral or ministerial" role in the action). It is also undisputed that the State is not attempting to collect twice for fees for which it has already been reimbursed. Therefore, the trial court did not abuse its discretion in awarding the State all of its requested attorney's fees.

### 4. Sufficiency of Affidavits Regarding Investigatory Fees

Last of all, Tocco argues that the affidavits regarding investigator's fees submitted by Detective James Mann of the Maricopa County Sheriff's Office and by investigators from the Department of Public Safety were inadequate under *Schweiger* and, therefore, that the State's request for such fees should have been denied. Detective Mann's affidavit describes only months and hours spent on the case, while the DPS affidavit lists only names of investigators and hours spent by each on Tocco's case. Tocco does not object to the hourly rates proposed for the investigators, which were based upon their salaries.

Although the investigators' affidavits established that the time entries included therein were expended on the case against Tocco, the affidavits clearly did not meet the specificity requirements set forth in *Schweiger* for attorney's fee applications. However, the State argues that such requirements should not apply to requests for investigatory fees. We need not reach this question because we hold that Tocco did not timely object to the investigators' affidavits.

Tocco objected to the investigators' affidavits for the first time at the evidentiary hearing. Therefore, the State was not given an opportunity prior to the hearing to respond to Tocco's objections by providing more detailed affidavits. More importantly, even though Tocco requested the evidentiary hearing, he declined to question the investigators, who were present at the hearing, regarding their affidavits. Finally, the State claims, and Tocco does not dispute, that Tocco already possessed copies of all of the investigative reports prepared by the investigators because such reports were furnished to Tocco in the criminal action pursuant to Rules 15.1(a)(1) and 15.4, Arizona Rules of Criminal Procedure. Although the better practice would be for an application for investigator's fees to contain descriptions of the work done so that the defendant can make objections to the recovery of particular matters, under the circumstances of this case, we hold that the trial court did not abuse its discretion in awarding the State the requested investigative fees and costs.

### CONCLUSION

In conclusion we hold that a request for an award of attorney's fees in a RICO case is not controlled by the rate formula in *Schweiger* because that is a contract case in which the fee provision was in the contract and the rate is controlled by the language of A.R.S. sections 12–341.01(A) and (B) and cases interpreting it. Likewise, we hold that the rate in this case is not controlled by *Lacer* because that is a contract case in which the rate is also controlled by A.R.S. sections 12–341.01(A) and (B). In a RICO case such as this one, where a fee request is made pursuant to A.R.S. section 13–2314(D)(5), we hold that "reasonable" attorney's fees means the prevailing market rate in the community. If necessary, a court making such a determination may hold an evidentiary hearing and hear expert witness testimony in order to determine the prevailing market rate. This evidence may consist of the fees charged by private attorneys doing the same or similar work. Naturally, the number of years of experience of the attorney is also a factor in determining the market rate. This concept will also apply to assistant attorneys general, and therefore different attorneys within the Attorney General's office will have different market rates. These rates may be averaged in determining a rate, as was done here by stipulation, or individual rates may be multiplied by hours.

We affirm the trial court's award of attorney's and investigator's fees and costs in favor of the State. The trial court's calculation of the attorney's fee award based on the prevailing market rate was appropriate because A.R.S. section 13–2314 does not limit an award of reasonable attorney's fees to the amount of compensation actually paid to the attorneys. In addition, Tocco failed to present sufficient evidence that any of the attorney time entries submitted by the State were immaterial, irrelevant or otherwise unreasonable. Finally, the trial court did not abuse its discretion in awarding the State the investigatory fees and costs. We also award the State its attorney's fees and costs on appeal pursuant to A.R.S. section 13–2314, subject to compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

EUBANK and KLEINSCHMIDT, JJ., concur.