291 P.3d 358

**In re the Marriage of Dana Corry THOMPSON, Petitioner/Appellee,**

v.

**William CORRY, Respondent/Appellant.**

**No. 1 CA–CV 11–0729.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 15, 2012.

Community Legal Services By Joseph C. Waesche, Prescott, Attorneys for Petitioner/Appellee.

Gene R. Stratford, Phoenix, Attorney for Respondent/Appellant.

## OPINION

TIMMER, Presiding Judge.

¶ 1 This appeal requires us to decide whether the family court is authorized by Arizona Revised Statutes ("A.R.S.") section 25–324 (West 2012)[1] or Arizona Rule of Family Law Procedure ("Rule") 92(E)(2) to award attorney's fees to a party represented by pro bono counsel and, if so, whether those fees should be calculated on a cost basis or by using the prevailing market rate for the attorney's services. For the reasons that follow, the family court properly awarded fees to appellee Dana Corry Thompson ("Mother") based on the prevailing market rate for her pro bono attorney's services. We therefore affirm.

## BACKGROUND

¶ 2 The parties are the parents of two young children. In April 2010, the family court appointed a therapeutic interventionist to counsel the children and ordered each parent to pay a share of her fees. Appellant William Corry ("Father") failed to pay his share and, on Mother's petition, the court found him in contempt. The court set forth the manner in which Father could purge his contempt, ordered him to pay Mother's "reasonable and necessary attorneys' fees and costs incurred in prosecuting [the] action," and directed Mother's counsel to file an application for fees and costs with a supporting affidavit. The court did not specify the statutory basis for the fee award.

1. Absent material revisions after the relevant date, we cite a statute's current version.

¶ 3 Community Legal Services ("CLS"), a not-for-profit law firm that provides legal services to qualifying low-income Arizonans, represented Mother pro bono in petitioning the court to compel Father's compliance with the court's order. Upon CLS's application with accompanying attorney's affidavit, the family court awarded Mother $3,962.50 in attorney's fees and costs. Although CLS requested fees based on an hourly rate of $250 per hour, the court applied a rate of $175 per hour. This timely appeal followed.

## DISCUSSION

¶ 4 We review Mother's entitlement to fees de novo as an issue of law, *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24, 126 P.3d 165, 173 (App.2006), but we review the court's calculation of the amount of fees for an abuse of discretion. *ABC Supply, Inc. v. Edwards*, 191 Ariz. 48, 52, 952 P.2d 286, 290 (App.1996).

### A. Authority for fee award

¶ 5 Father contends the family court erred in awarding Mother attorney's fees incurred in compelling him to pay his share of the counselor's fees because no statute or rule authorized the award. Although the family court did not specify its basis for awarding fees, the parties agree only A.R.S. § 25–324 or Rule 92(E)(2) potentially authorized the award. Section 25–324 authorizes the court to "order a party to pay a reasonable amount to the other party for the costs and expenses [including attorney's fees] of maintaining or defending" a domestic relations matter "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25–324(A), (C). Rule 92(E)(2) permits the court to order a party in contempt of an order to pay another party's attorney's fees incurred to obtain compliance with the order.

¶ 6 Father argues the court erred by awarding fees under either § 25–324 or Rule 92(E)(2) because both provisions require the receiving party to incur attorney's fees, and Mother did not incur any fees in light of CLS's pro bono representation. But we have previously upheld the right of pro bono counsel to recover attorney's fees under A.R.S. § 25–324. *Keefer v. Keefer*, 225 Ariz. 437, 441 n. 4, ¶ 16, 239 P.3d 756, 760 n. 4 (App. 2010) (stating it is permissible to award attorney's fees on appeal to a spouse who was represented pro bono). A majority of other jurisdictions considering the matter has similarly awarded attorney's fees to parties represented by pro bono counsel in domestic relations cases. *See Henriquez v. Henriquez*, 185 Md.App. 465, 971 A.2d 345, 357–58 (2009), *aff'd*, 413 Md. 287, 992 A.2d 446 (2010) (awarding fees under statute similar to A.R.S. § 25–324 and collecting cases). And in applying fee-shifting statutes in other types of cases, Arizona courts have not drawn a distinction between privately retained and legal-aid counsel. *See Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 608, 775 P.2d 521, 536 (1989) (permitting fees to class represented pro bono which prevailed in challenge to adequacy of mental health services provided by state and county); *Quine v. Godwin*, 132 Ariz. 409, 414, 646 P.2d 294, 299 (App.1982) (awarding fees to CLS in an action for unpaid wages). Other courts have taken the same approach. *See, e.g., Richland Sch. Dist. v. Dep't of Industry*, 174 Wis.2d 878, 498 N.W.2d 826, 840 (1993) (awarding fees for pro bono representation in wage dispute and collecting cases).

¶ 7 Father nevertheless argues that our decision in *State v. Torrez*, 154 Ariz. 522, 744 P.2d 434 (App.1987), compels reversal of the fee award to Mother. In *Torrez*, the state initiated a paternity action in its name under a free program to benefit mothers of any economic means. *Id.* at 523, 744 P.2d at 435. The father eventually admitted paternity, and the court ordered him to pay past-due and ongoing child support to the mother. *Id.* The court also ordered the father to reimburse the state its attorney's fees pursuant to former A.R.S. § 12–849(E), which authorized a fee award to a party in a paternity suit after considering the parties' respective financial conditions. *Id.* On appeal, this court vacated the fee award, holding § 12–849(E) did not authorize fees for the state when it is a party. *Id.* at 524, 744 P.2d at 436 ("If the legislature had intended to require the defendant in a paternity case to reimburse the

state for the reasonable expenses incurred in bringing the case, it could have so stated."). The court suggested the result would have been different had the mother retained counsel to bring the case. *Id.* at 524, 744 P.2d at 436. Because she availed herself of the free program, however, the court concluded she had the means to properly litigate, and the fee award was improper. *Id.* at 524–25, 744 P.2d at 436–37. Father seizes on this last statement to argue the fee award was improper because, like the mother in *Torrez*, Mother possessed the proper means to litigate as CLS was willing to represent her pro bono.

¶ 8 We are not persuaded *Torrez* controls here. First, whether mother's counsel in *Torrez* would have been entitled to a fee reimbursement had she retained counsel on a pro bono basis was not at issue in the case. Second, assuming the court's statement meant a party could never be awarded fees for pro bono representation, we reject *Torrez* on this point in favor of the holdings in *Keefer, Henriquez,* and like cases. Neither § 25–324 nor Rule 92(E)(2) conditions an award of fees on whether retained counsel worked pro bono or for a profit. *See Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414, 426 (1997) (reviewing statute similar to § 25–324(A) and concluding no discernible legislative intent to preclude award to pro bono counsel); *In re Marriage of Malquist,* 266 Mont. 447, 880 P.2d 1357, 1364 (1994) (to same effect), *overruled on other grounds by In re Marriage of Cowan,* 279 Mont. 491, 928 P.2d 214 (1996). Additionally, public policies served by § 25–324 and Rule 92(E)(2)—assisting the party least able to pay to litigate and sanctioning parties who violate orders, respectively—are furthered by awarding fees for pro bono representation. *See In re Marriage of Zale,* 193 Ariz. 246, 251, ¶ 20, 972 P.2d 230, 235 (1999) (stating purpose of § 25–324); *Hays v. Gama,* 205 Ariz. 99, 104, ¶ 23, 67 P.3d 695, 700 (2003) (acknowledging purpose of sanctions in domestic dispute). As stated by the Appellate Court of Connecticut:

> An award of counsel fees that does not discriminate against nonprofit legal service entities will encourage nonprofit counsel to expend its resources in the representation of those clients who are unable to afford private counsel in disputed child custody and child support enforcement litigation. The purposes of such acts as the Uniform Child Custody Jurisdiction Act in Connecticut, [ ] are advanced and are made more available to the poor where there is an expectancy that the nonprofit legal services will recoup at least part of its resources through an award of counsel fees to its client. Furthermore, a realization that the opposing party, although poor, has access to an attorney and that an attorney's fee may be awarded deters noncompliance with the law and encourages settlements.

*Benavides v. Benavides,* 11 Conn.App. 150, 526 A.2d 536, 538 (1987) (citation omitted); *see also Henriquez,* 971 A.2d at 358 (listing cases noting similar policy considerations).

¶ 9 Father also argues the court erred because it effectively conferred a contingent fee award on CLS in violation of Ethical Rule ("ER") 1.5, which requires all contingent fee agreements to be "in a writing signed by the client." Ariz. R. Sup.Ct. 42, ER 1.5(c). But the court's award of attorney's fees did not create a contingent fee arrangement in violation of ER 1.5, because payment of fees to CLS is not contingent on the outcome of the lawsuit. Neither § 25–324 nor Rule 92(E)(2) conditions an award of attorney's fees on whether the recipient party prevails in the case. Similarly, we reject Father's related contention that the court applied an incorrect "prevailing party" standard under either § 25–324 or Rule 92(E)(2), or both, by effectively awarding a contingency fee to CLS.

¶ 10 In summary, the family court was authorized by both A.R.S. § 25–324 and Rule 92(E)(2) to award attorney's fees to Mother. Neither provision precludes an award of fees for pro bono legal representation. Consequently, the family court did not err by awarding fees to Mother for CLS's representation.

**B. Calculation of hourly rate**

¶ 11 Father alternately argues the family court erred by calculating the award of attorney's fees based on a prevailing market rate of $175 per hour for CLS's legal services.

He asserts the court should have calculated an hourly rate using the rate charged by CLS—zero dollars per hour—or adding the CLS attorney's annual salary and overhead expenses and then dividing by the number of hours worked by that attorney annually.

¶ 12 Father primarily relies on this court's decision in *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983), to argue the family court was precluded from using a rate other than the zero-rate actually "charged" Mother by CLS. In *Schweiger*, the court noted that the traditional measure for a fee award in public rights litigation is the reasonable hourly rate used in the community for similar types of cases. *Id.* at 187, 673 P.2d at 931. In discussing a fee award authorized in a commercial dispute, however, we stated a court should commence calculating a reasonable fee award by determining what the attorney charged the client in the particular matter, reasoning that rate is the best indication of what is reasonable under the circumstances. *Id.* at 187–88, 673 P.2d at 931–32. Father relies on this holding to argue that because CLS had a zero hourly billing rate, the family court was precluded from awarding fees based on a $175–per-hour rate. We disagree.

■ ¶ 13 The *Schweiger* court's above-described methodology for calculating a reasonable fee is inapplicable when the client is not obligated to pay any fees. *State v. Tocco*, 173 Ariz. 587, 593, 845 P.2d 513, 519 (App. 1992) (rejecting argument that *Schweiger* applies to calculate reasonable fee to award to the state when it was represented by Attorney General's Office). And regardless, *Schweiger* acknowledged that a court is not bound by the fee agreement and can make upward adjustments to the rate. 138 Ariz. at 188, 673 P.2d at 932; *but see* A.R.S. § 12–341.01(B) (providing fee award under § 12–341.01(A) cannot "exceed the amount paid or agreed to be paid" by the client); *Lacer v. Navajo Cnty.*, 141 Ariz. 392, 396, 687 P.2d 400, 404 (App.1984) (limiting county's fee award to actual cost of defense in light of § 12–341.01(B)). Consequently, *Schweiger* did not preclude the family court from awarding Mother attorney's fees based on an hourly rate greater than the one agreed to

between Mother and CLS. A contrary interpretation of *Schweiger* would conflict with cases permitting recovery of fees incurred on a pro bono basis. *See supra* ¶¶ 6–8.

¶ 14 Father next acknowledges that courts have used prevailing hourly market rates to calculate fee awards for pro bono counsel, but he contends such awards are confined to civil rights and public-rights cases. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 893–94, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (civil rights lawsuit); *Arnold*, 160 Ariz. at 608, 775 P.2d at 536 (class action to compel state and county to provide adequate mental health care). We do not discern such limitations.

¶ 15 *Blum* involved a fee award to a class of Medicaid recipients which prevailed in a suit against New York filed pursuant to 42 U.S.C. § 1983. 465 U.S. at 889, 104 S.Ct. 1541. The class sought an award of "reasonable attorney's fees" authorized by 42 U.S.C. § 1988 for pro bono representation by a non-profit law firm. *Id.* at 890, 104 S.Ct. 1541. New York urged the Court to use a cost-based rate rather than the prevailing market rate to calculate the award, arguing use of the latter methodology would "lead[ ] to exorbitant fee awards and provide[ ] windfalls to civil rights counsel contrary to the express intent of Congress." *Id.* at 892, 104 S.Ct. 1541. The Court examined the language and legislative history of § 1988 and determined Congress intended courts to calculate attorney's fees awarded under § 1988 for either for-profit or non-profit legal services by using methodology employed when making awards under other federal fee-shifting statutes. *Id.* at 893–94, 104 S.Ct. 1541. The Court then responded that because such awards used a prevailing market rate, which "have resulted in fees which are adequate to attract competent counsel, but ... do not produce windfalls to attorneys," courts making awards under § 1988 should also use that methodology. *Id.* The Court concluded that the public policy arguments favoring a cost-based standard must be made to Congress rather than the courts. *Id.* at 895–96, 104 S.Ct. 1541. Significantly, the Court's analysis did not turn on any reasoning unique to civil rights cases, as Father suggests.

¶ 16 In *Arnold,* the Arizona Supreme Court addressed whether A.R.S. § 12–348(A)(5) authorized a fee award to a class which successfully compelled the state and a county to provide adequate mental health care. 160 Ariz. at 608, 775 P.2d at 536. After deciding such fees were authorized even though the class had pro bono counsel, the *Arnold* court concluded the trial court correctly calculated those fees using the prevailing market rate. *Id.* The court stated without elaboration that the reasoning of *Blum* supported this decision even though *Blum* involved a federal statute. *Id.* As in *Blum,* the *Arnold* court neither based its decision on the subject matter or purpose of the lawsuit nor suggested it has narrow application.

¶ 17 Our decision in *State v. Tocco,* 173 Ariz. 587, 845 P.2d 513 (App.1992) supports a conclusion that courts should use a prevailing market rate methodology to calculate fees for pro bono representation when the pertinent statute authorizes an award of fees. In *Tocco,* the trial court in a civil racketeering case used the prevailing market rate to calculate a fee award authorized by A.R.S. § 13–2314 for the work of the state's assistant attorneys general. *Id.* at 589, 590, 845 P.2d at 515, 516. On appeal, the defendant argued the court erred by failing to calculate the award using an hourly rate based on the salaries of those attorneys. *Id.* at 591, 845 P.2d at 517. Relying on *Blum, Arnold,* and cases from other jurisdictions, we rejected the defendant's argument, stating:

> [T]he trial court here followed the general rule for calculating attorney's fee awards made pursuant to a statute authorizing the recovery of "reasonable" fees. This rule, used particularly in civil rights, antitrust cases and other public benefit cases, provides that prevailing market rates and not the actual costs of legal services are the appropriate measure for an award of reasonable attorney's fees, even when the party being awarded the fees has been repre-

sented by salaried government or public non-profit counsel.

*Id.*

¶ 18 The *Tocco* court also adopted the Seventh Circuit's reasoning in an antitrust case that because the recipient party rather than its attorney is entitled to an award of reasonable attorney's fees, the amount actually paid by the party to the attorney is irrelevant "because 'the determination of what is a 'reasonable' fee is to be made without reference to any prior agreement between the parties.'" *Id.* at 591–92, 845 P.2d at 517–18 (quoting *Illinois v. Sangamo Constr. Co.,* 657 F.2d 855, 861 (7th Cir.1981)). Finally, the court concluded that use of prevailing market rates is "preferable to extensive judicial scrutiny of private fee arrangements or of the internal economics of the Attorney General's office," would not unduly burden the opposing party, and would encourage enforcement of racketeering statutes. *Id.* at 592, 845 P.2d at 518.

■ ¶ 19 The reasoning in *Tocco* persuades us the family court correctly followed the general rule by using the prevailing market rate to calculate a reasonable fee award for Mother.[2] Just as scrutinizing the Attorney General Office's finances to arrive at a cost-based rate would be unwieldy, probing CLS's actual costs incurred for a particular matter would be burdensome and could spawn additional litigation to resolve any disputes concerning those costs. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("A request for attorney's fees should not result in a second major litigation."). Conversely, Father did not shoulder any burden by the court's use of a prevailing market rate as it was readily available for calculation by all parties. Use of the prevailing market rate in domestic relations cases also encourages parties to take reasonable positions and to follow court orders as parties may be more apt to act inappropriately if they only risk paying actual costs incurred by pro bono counsel.

**2.** Although A.R.S. § 25–324(A) explicitly authorizes an award of "reasonable" attorney's fees, Rule 92(E)(2) merely authorizes an award of fees as a sanction. Nevertheless, because the award

of an "unreasonable" amount of fees would be an abuse of the court's discretion, we conclude any fee award pursuant to Rule 92(E)(2) must be for a reasonable amount.

¶ 20 Father relies on *Softsolutions, Inc. v. Brigham Young Univ.*, 1 P.3d 1095 (Utah 2000), to support his contention that CLS's hourly rate should be calculated on a cost basis. In *Softsolutions,* the Utah Supreme Court held that although fees could be awarded to a party represented by in-house counsel, they should be calculated using a cost-based rate because using a market rate would be inconsistent with the public policy underlying fee awards—to indemnify the recipient party rather than granting it a "windfall" profit that punishes the opposing party. *Id.* at 1106, 1107, ¶¶ 46, 51.

¶ 21 We are not convinced by *Softsolutions* to use a cost-based methodology to calculate CLS's fees. First, the public policy concerns expressed in *Softsolutions* do not exist here because the fee award is not made to a party-entity that would reap a profit.[3] Instead, the court awarded fees to an individual represented by a law firm on a pro bono basis. For the reasons previously explained, *see supra* ¶ 8, public policy supports compensation of pro bono counsel when a fee award is otherwise authorized. Second, we discern no reason why Father should reap the benefit of CLS's decision to represent Mother pro bono. *See Serrano v. Unruh*, 32 Cal.3d 621, 186 Cal.Rptr. 754, 652 P.2d 985, 999 (1982) (rejecting argument that use of market rate provides a windfall to recipient and observing that an award at less than market value would create a windfall for party ordered to pay fees). Third, and finally, the *Softsolutions* approach would require the type of judicial scrutiny and expense avoided by use of the market-rate approach and may not encourage parties to act reasonably and follow court orders to the same extent as when payment of a market rate is possible. *See supra* ¶ 19. Other jurisdictions have similarly rejected *Softsolutions'* calculation methodology. *See, e.g., AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 517–19 (Tex.App.2009) (rejecting *Softsolutions,* adopting market rate approach, and collecting cases using market rates); *see also In re Marriage of Ward*, 3 Cal.App.4th 618, 4 Cal. Rptr.2d 365, 372 n. 8 (1992) (using market

rate to calculate fee award for spouse represented pro bono in a domestic relations case).

¶ 22 In summary, we hold that a court awarding fees pursuant to A.R.S. § 25–324 or Rule 92(E)(2) when the recipient party is represented by counsel on a pro bono basis should calculate the applicable hourly rate by using the prevailing market rate in the community for similar services. Father does not contest that $175 per hour is the prevailing market rate for CLS's legal services. Consequently, the family court did not err.

### C. Amount of time expended

¶ 23 Father finally argues the family court erred by awarding Mother fees for excessive time expended by CLS in performing various tasks. The family court awarded Mother fees for 22.5 hours of legal work, which was four hours less than Mother's request. The court abused its discretion only if no reasonable basis exists for the court's award. *Harris v. Reserve Life Ins. Co.*, 158 Ariz. 380, 384, 762 P.2d 1334, 1338 (App.1988).

¶ 24 Father contends CLS could have reasonably expended no more than eight hours on those tasks for which fees were awarded. He points out the contempt hearing lasted only 2.5 hours and involved just three witnesses. We cannot say the family court abused its discretion by awarding fees for the time spent preparing for the hearing as well as attending it. The court observed the proceedings and was in the best position to assess the reasonableness of the hours billed. Indeed, the court undertook this assessment by reducing CLS's time by four hours. We do not discern error.

### CONCLUSION

¶ 25 For the foregoing reasons, we hold that the family court is authorized by A.R.S. § 25–324 and Rule 92(E)(2) to award attorney's fees to a party represented by pro bono counsel when a fee award would be authorized for a party represented by paid counsel. When calculating the fee award, the court

---

**3.** We do not decide whether the market-rate methodology should be used to calculate fees for

in-house counsel as that issue is not before us.

should use an hourly rate based on the prevailing market rate in the community for similar legal services. Because the family court in this case entered an award consistent with these principles, we affirm.

CONCURRING: MARGARET H. DOWNIE and PATRICIA K. NORRIS, Judges.