NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

GARY THOMAS, *Petitioner/Appellant*,

*v.*

JESSICA CALDWELL, *Respondent/Appellee*.

No. 1 CA-CV 14-0673 FC
FILED 3-3-2016

Appeal from the Superior Court in Maricopa County
No. FC2013-053488
The Honorable Carey Snyder Hyatt, Judge *Retired*

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Petitioner/Appellant*

Vescio Law Firm, PC, Glendale
By Theresa L. Seifert
*Counsel for Respondent/Appellee*

## MEMORANDUM DECISION

Presiding Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Randall M. Howe joined.

**C A T T A N I**, Judge:

¶1　　　Gary Thomas appeals from the superior court's denial of his motion for new trial.[1]  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　Gary Thomas and Jessica Caldwell have one child together, M., and Caldwell has twin boys, J.P. and K.P., from her previous marriage. After Thomas and Caldwell ended their relationship, Thomas filed a petition in superior court to establish paternity, legal decision making, parenting time, and child support relating to M., as well as *in loco parentis* parenting time with the twins.  Thomas subsequently dismissed his *in loco parentis* claim, acknowledging he lacked standing to seek parenting time with the twins.

¶3　　　Thomas and Caldwell thereafter entered into an agreement to resolve Thomas's petition.  Along with addressing issues related to M., the agreement provided (in Paragraph 12) that when Caldwell's parenting time with the twins and Thomas's parenting time with M. overlapped, Caldwell would make reasonable efforts to facilitate the twins spending time with Thomas once a week.  Additionally, Caldwell agreed that if she could not care for the twins during her parenting time with them (and the twins' biological father was unable to do so), she would "reasonably consider" having Thomas care for them (the "Right of Second Refusal").

¶4　　　Two months after the agreement was signed, Thomas filed a contempt petition stating that he had not seen the twins in two months and alleging that Caldwell had failed to make reasonable efforts to facilitate his relationship with the twins.  Caldwell denied the allegations.

---

[1]　　Thomas's opening brief also challenges the superior court's order denying his request for contempt sanctions.  This court previously ruled that we lack jurisdiction to address the contempt order.  Thus, we restrict our analysis to the denial of Thomas's motion for new trial.

¶5　　　The superior court held an evidentiary hearing in which Thomas and Caldwell testified.　The court then denied the contempt petition, concluding that Thomas had unreasonably failed to facilitate his own relationship with the twins.　The court further ruled that Paragraph 12 of the agreement was unenforceable to the extent it required that the twins spend time with Thomas while M. is with Thomas because that is when the twins are with their biological father.

¶6　　　Thomas filed a motion for new trial, arguing that the ruling was not justified by the evidence and was contrary to the law.　*See* Ariz. R. Fam. Law P. ("ARFLP") 83(A)(6).　The court denied the motion, and Thomas timely appealed.　We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(5)(a).[2]

## DISCUSSION

¶7　　　Thomas argues that the superior court improperly denied his motion for new trial.　He asserts that the court's rulings improperly modified his agreement with Caldwell in two ways: (1) by sua sponte declaring Paragraph 12 to be unenforceable and (2) by finding that Thomas could not have "alone time" with the twins unless Caldwell works more than 12 hours and the twins' biological father is unable to take them.　We review the denial of a motion for new trial for abuse of discretion.　*Kent v. Carter-Kent*, 235 Ariz. 309, 312, ¶ 13 (App. 2014).

## I.　The Court Did Not Modify Paragraph 12.

¶8　　　Thomas's assertion that the superior court improperly modified the agreement fails because the court did not modify the agreement and instead simply addressed the current enforceability of one of its provisions.

¶9　　　The court correctly determined that Paragraph 12 cannot currently be enforced because of limits set by the plain language of the agreement, which provides that "[w]hen [Caldwell] has parenting time with twin boys from a prior relationship . . . [Caldwell] will agree to facilitate a continuing relationship using her reasonable efforts to facilitate one boy per week spending time with [Thomas] when he has [M.]."　Because Thomas currently has parenting time with M. on Mondays and Tuesdays and alternating weekends, these are the only days Caldwell can facilitate the twins visiting Thomas while M. is with him.　But Caldwell

---

[2]　　　Absent material revisions after the relevant date, we cite a statute's current version.

testified that the twins' biological father currently has parenting time with them on Mondays, Tuesdays, and alternating weekends, an identical schedule to Thomas's parenting time with M. Because of this scheduling conflict, there is currently no period during Caldwell's parenting time when she has the twins and Father has M. Thus, because Thomas has parenting time with M. only during the twins' biological father's parenting time, the superior court did not err by declining to enforce that aspect of Paragraph 12.[3]

**¶10** Thomas further argues that the superior court's declaration that Paragraph 12 is unenforceable "essentially denied [him] any visitation" with the twins and thus improperly modified the agreement. Thomas argues that under ARFLP 91(F) and A.R.S. § 25-411, the superior court did not follow the procedures necessary to change his visitation rights with the twins.

**¶11** But Thomas has not established a right to third party visitation with the twins. *See* A.R.S. §§ 25-402(B)(2), -409. The only manner in which a court has authority to grant visitation to a nonparent is under A.R.S. § 25-409. *See Sheets v. Mead*, 238 Ariz. 55, 57, ¶ 7 (App. 2015) (recognizing that the superior court's authority to grant nonparent visitation rights is "purely statutory" and governed by § 25-409); *see also Hughes v. Creighton*, 165 Ariz. 265, 268 (App. 1990) (noting that parents can preclude visitation by nonparents who do not have statutorily granted rights to such visits). And Thomas abandoned his *in loco parentis* claim before he and Caldwell reached their agreement.

**¶12** Moreover, Thomas has not established that Caldwell unreasonably prevented him from spending time with the twins. Despite finding Paragraph 12 unenforceable, the court noted that Caldwell had in fact made reasonable efforts to facilitate Thomas's relationship with the twins, and the court ordered her to continue doing so. The court further found that Thomas was himself responsible to some extent for his lack of time with the twins, a finding supported by the record. For example, Thomas declined Caldwell's invitation to attend the twins' sporting activities because he did not want to be with the twins if their biological

---

[3] Although as a practical matter, Paragraph 12 is unenforceable at this time, it may be enforceable in the future if, for example, parenting time is modified such that M. is with Thomas when Caldwell has parenting time with the twins.

father was also going to be there. Thus, Thomas did not establish that Caldwell violated the enforceable portions of Paragraph 12.

## II.     The Court Did Not Modify the Right of Second Refusal.

¶13         Thomas also contends that the superior court modified the Right of Second Refusal by ordering that he could not have time with the twins unless Caldwell was working more than 12 hours, the twins' biological father was unavailable to care for them, and Thomas was caring for M.

¶14         In full, the Right of Second Refusal reads:

> Both parents will have the right of first refusal if either is unavailable to care for [M.] during his or her parenting time for a period of at least twelve (12) hours. [Caldwell] will use times she is not available and has only the boys to make sure the boys spend some time with [Thomas] and M. If [Caldwell] has parenting time with the twins, if she cannot care for them, and if the twins' natural father is unable to care for the twins, [Caldwell] will reasonably consider using [Thomas] as the care provider.

At the hearing, Thomas asserted that Caldwell violated the Right of Second Refusal because she began taking M. and the twins to the Boys and Girls Club rather than letting them spend time with Thomas. But Caldwell testified that she took the children to the Boys and Girls Club for less than 12 hours at a time when the children requested to go there to play with friends, and that it served the additional purpose of being a potential back-up care arrangement because her new job would require her to work an hour and a half after the children were out of school.

¶15         Based on this testimony, the court reasonably concluded that "the Boys and Girls Club Activity does not fall within the provision of the [agreement] stated due to the fact that the activity is under a 12-hour period and that it is an 'activity' which does not trigger the right of first or second refusal." Thus, Thomas did not establish that Caldwell violated the Right of Second Refusal.

¶16         Because substantial evidence supports the superior court's findings and because the court did not impermissibly modify the agreement, the court did not abuse its discretion by denying Thomas's motion for new trial.

**III.    Attorney's Fees.**

**¶17**      Both Thomas and Caldwell seek attorney's fees and taxable costs incurred on appeal.  Having considered the statutory criteria, and in an exercise of our discretion, the court denies Thomas's request and awards Caldwell her reasonable attorney's fees and taxable costs pursuant to A.R.S. § 25-324(A), contingent upon her compliance with ARCAP 21.[4]  *See Thompson v. Corry*, 231 Ariz. 161, 164, ¶ 10 (App. 2012) (holding that a court may award fees for a pro bono attorney under A.R.S. § 25-324).

## CONCLUSION

**¶18**      For the foregoing reasons, we affirm the court's denial of Thomas's motion for new trial.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama

---

[4]      In June 2015, this case was placed in the court's Pro Bono Representation Program, and pro bono counsel was appointed to represent Caldwell in the appeal.  "[T]he court usually will hear oral argument in cases selected for the Program." Arizona Court of Appeals Pro Bono Representation Program Manual 1.  Although oral argument had been scheduled for this case, this court vacated oral argument after counsel for Thomas withdrew in mid-January 2016, and after determining that the briefs and record adequately presented the facts and legal arguments. *See* ARCAP 18(b).